United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 02, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO.   21-60086 |
| NEUTRAL POSTURE, INC., | § | |
| | § | CHAPTER 11 PROCEEDING |
| Debtor | § | SUBCHAPTER V |

---

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### CONFIRMING DEBTOR'S PLAN OF REORGANIZATION

On March 2, 2022, the Court held a hearing (the "Confirmation Hearing") to consider confirmation of the Plan of Reorganization filed by Neutral Posture, Inc. (the "Debtor") on January 27, 2022 [ECF # 91] (as modified by this Order, the "Plan")[1].

On January 27, 2022 the Court entered its Order on Deadlines Related to Returning Ballots and Filing Objections to Plan and Setting of Confirmation Hearing [ECF # 92] (the "Plan Deadline Order")   The Plan Deadline Order, among other things, (i) established February 25th, 2022, as the deadline for submitting votes on the Plan, and filing and serving objections to confirmation of the Plan, and (ii) scheduled a hearing commencing on March 2, 2022, at 9:00 a.m. (Central Time) to consider confirmation of the Plan and objections thereto (the "**Confirmation Hearing**")

Based upon the Bankruptcy Court's consideration of, among other things, (i) the Plan, (ii) exhibits admitted into evidence and testimony adduced at the Confirmation Hearing, (iii) representations and arguments of counsel at the Confirmation Hearing, (iv) the docket of the Bankruptcy Case, and (v) other relevant factors affecting this Bankruptcy Case, the Bankruptcy Court makes the following findings of fact and conclusions of law[2], and issues this Findings of

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Plan.
[2] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

Fact, Conclusions of Law, and Order Confirming Plan of Reorganization (this "Confirmation Order") confirming the Plan under 11 U.S.C. § 1191(a)(consensual):

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.      Exclusive Jurisdiction; Venue; Core Proceeding. This Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(a).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and whether it should be confirmed.

2.      Burden of Proof. The Debtor has met its burden of proving the elements of 11 U.S.C. § 1129(a) and (b) by a preponderance of evidence.

3.      Notice. In accordance with Bankruptcy Rules 2002, 3018, 3019, 6004, 6006, 9007 and 9014, and the Plan Deadline Order, all due, adequate, and sufficient notice of the Plan and of the Confirmation Hearing and of all deadlines for filing objections to the Plan have been given to all known holders of Claims and Interests in accordance with the Plan Deadline Order. The Plan and the Plan Deadline Order were transmitted and served in compliance with the Plan Deadline Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required.

4.      Solicitation. The Debtor served Plan packages in accordance with the Plan Deadline Order, as attested to in the Certificates of Service of Plan Packages [ECF # 93]. Pursuant to the Plan Deadline Order, Howley Law, PLLC Attn: Eric Terry ("Counsel") was appointed to serve as the party responsible for receiving completed ballots and determining and tabulating votes on the Plan. Counsel filed the Ballot Summary [ECF # 102] (the "Ballot Summary").

5.      Pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of the Modifications, set forth below, require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims or Equity Interests be afforded an opportunity to change previously-cast acceptances or rejections of the Plan. As modified by the Modifications, the Plan shall constitute the Plan submitted for confirmation by the Court.

6.      <u>Objections</u>. All objections to confirmation have been resolved.

7.      <u>Section 1121</u>. Neutral Posture is a proper debtor under § 109 of the Bankruptcy Code and qualifies as a small business debtor under Subchapter V under § 1182 of the Bankruptcy Code.

8.      <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The      Plan complies with applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C. §1129(a)(1).

9.      <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. In addition to Administrative Claims and Priority Tax Claims, which need not be designated, the Plan designates six Classes of Claims and Interests. The Claims and Interests placed in each of Classes 1 through 6 are substantially similar to other Claims and Interests in each such Class, thereby satisfying the requirements of 11 U.S.C. §§ 1122 and 1123(a)(1). Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes and the Plan treatment thereof do not unfairly discriminate between holders of Claims or Interests. The Plan satisfies 11   U.S.C. §§ 1122 and 1123(a)(1).

10.     <u>Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. The Plan complies fully with the requirements of section 1123(a)(2) of the Bankruptcy Code. The Plan specifies which classes of Claims and Equity Interests are not impaired under the Plan.

11.     <u>No Discrimination (11 U.S.C. § 1123 (a)(4))</u>. The Plan provides for the same treatment for each Claim or Interest in each respective Class, thereby satisfying 11 U.S.C. § 1123(a)(4).

12.     <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan provides adequate and proper means for its implementation, thereby satisfying 11 U.S.C. § 1123(a)(5).

13.     <u>Management of the Reorganized Debtor (11 U.S.C. § 1123(a)(5))</u>. The Plan provides that the Debtor acting through its CEO will administer Debtor's Assets and does not alter the Debtor's existing corporate agreement. Thus, the requirements of 11 U.S.C. § 1123(a)(5) are satisfied.

14.     <u>Future Income of Individual Debtor (11 U.S.C. § 1123(a)(8))</u>. The Debtor is not an individual, and therefore, the requirements of 11 U.S.C. § 1123(a)(8) do not apply to the Case.

15.     <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) the disposition of executory contracts and unexpired leases; (b) the retention of, and right to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any person or entity; and (c) the treatment of rights of holders of Claims and Interests.

16.      <u>Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C.§ 1129(a)(2), specifically:

a.   The Debtor is a proper proponent of the Plan under 11 U.S.C. § 1121(a).

b.   The Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Plan Deadline Order in transmitting the Plan.

17.      <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Court finds that the Debtor proposed the Plan in good faith and not by any means forbidden by law. As such, the Plan satisfies 11 U.S.C. § 1129(a)(3).

18.      <u>Payments for Service or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made for services or for costs and expenses in or in connection with the Case, or in connection with the Plan and incident to the Case, has been approved by, or are subject to the approval of, this Court as reasonable, thereby satisfying 11 U.S.C. § 1129(a)(4).

19.      <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtor has complied with Bankruptcy Code § 1129(a)(5). The Persons that must be identified pursuant to Bankruptcy Code § 1129(a)(5) have been identified. The continuation of Ms. Boenigk as Debtor's CEO as the party in control of the Reorganized Debtor as disclosed in the Plan is consistent with the interests of Claim and equity holders and with public policy, thereby satisfying Bankruptcy Code § 1129(a)(5).

20.      <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. No regulatory commission has any jurisdiction over rates charged by the Debtor. Further, the Plan does not provide for rate changes by the Debtor. Thus, 11 U.S.C. § 1129(a)(6) is not applicable in this Case.

21.     <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. With respect to each Impaired Class of claims and interests, each holder of a claim or interest of such Class has accepted the Plan, or will receive or retain under the Plan on account of such claim or interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

22.     <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8))</u>. All Classes have accepted the Plan, are unimpaired by the Plan or are deemed to have accepted the Plan.

23.     <u>Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Claims and Priority Tax Claims in the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(9).

24.     <u>Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))</u>. Classes 2, 3, and 5 are Impaired under the Plan and voted to accept the Plan. Pursuant to section 1129(a)(10) of the Bankruptcy Code, if a class of claims is impaired under the Plan, at least one class of claims that is impaired under the Plan must accept the Plan, determined without including any acceptance of the Plan by any insider. This requirement has been satisfied

25.     <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Debtor has presented uncontroverted evidence and testimony regarding feasibility of the Plan, thus satisfying the requirements of 11 U.S.C. § 1129(a)(11).

26.     <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. The Debtor is a small business Debtor under the provisions of Subchapter V of the Bankruptcy Code and therefore is not obligated to pay U.S. Trustee's fees.

27.     <u>Continuation of Retirement Benefits (11 U.S.C. § 1129(a)(13))</u>. The Debtor is not obligated to pay any "retiree benefits," as defined in 11 U.S.C. § 1114(a), and 11 U.S.C. § 1129(a)(13) is therefore inapplicable.

28.     <u>Payment of Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. The Debtor is not obligated to pay "domestic support obligations," as defined by 11 U.S.C. § 101(14A), and 11 U.S.C. § 1129(a)(14) is therefore inapplicable.

29.     <u>Payments of Individual Debts (11 U.S.C. § 1129(a)(15))</u>. The Debtor is not an individual, and 11 U.S.C. § 1129(a)(15) is therefore inapplicable.

30.     <u>Transfers of Property (11 U.S.C. § 1129(a)(16))</u>. All transfers of property of the Plan shall be made in accordance with applicable nonbankruptcy law, thus satisfying the requirements of 11 U.S.C. § 1129(a)(16).

31.     <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1191(b))</u>. All Classes have accepted the Plan.  Therefore, the Debtor does not need to proceed under the "cramdown" provisions of § 1191(b) of the Bankruptcy Code. Regardless, the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests.

32.     <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Bankruptcy Court finds and concludes that, other than the Plan, no other plan has been prosecuted in the Bankruptcy Case. Accordingly, the requirements of Bankruptcy Code § 1129(c) have been satisfied.

33.     <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

34.        <u>Satisfaction of Conditions to Confirmation</u>. The conditions to confirmation set forth in the Plan have been satisfied or will be satisfied by entry of this Confirmation Order or have been waived.

35.        <u>Settlement and Releases</u>. Pursuant to Bankruptcy Code §§ 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the distributions and payments and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of Claims, Causes of Action and controversies that a holder of any Claim may have with respect to any Allowed Claim or any distribution or payments to be made on account of such Allowed Claim. The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Causes of Action and controversies and the Bankruptcy Court's finding that such compromise or settlement (i) is in the best interests of the Debtor, its estate and the holders of such Claims, (ii) is fair, equitable, and reasonable, (iii) maximizes the value of the Debtor's estate, and (iv) is essential to the successful implementation of the Plan.

36.        <u>Transfer and Vesting of the Assets in the Reorganized Debtor</u>. The transferring and vesting of the Assets to and in the Reorganized Debtor free and clear of all Liens and Claims and all rights, title, and interest, except as expressly set forth in the Plan, is reasonable, necessary, and in accordance with applicable state law and applicable provisions of the Bankruptcy Code, including Bankruptcy Code §§ 363(b) and 1123(b)(3). On the Effective Date of the Plan, all property of the bankruptcy estate will vest in the reorganized Debtor pursuant to 11 U.S.C. § 1141(b) & (c), free and clear of all claims and interests, except as otherwise provided in this Plan.

37.     <u>Executory Contracts and Unexpired Leases</u>. On the Effective Date, all executory contracts and unexpired leases that were not previously rejected, assumed, or assumed and assigned shall be, and hereby are, assumed in accordance with Article 11 of the Plan.

38.     <u>Compliance with Bankruptcy Rule 3016</u>. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and the Debtor, which submitted and filed it, is appropriately identified.

39.     <u>Best Interests of Persons</u>. Confirmation of the Plan is in the best interests of the Debtor, its estate, holders of Claims and Interests, and all other parties in interest.

40.     <u>Findings of Fact and Conclusions of Law on the Record</u>. All findings of fact and conclusions of law announced by this Bankruptcy Court on the record in connection with confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference. To the extent that any of the findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

41.     <u>Retention of Jurisdiction</u>. This Court may properly retain jurisdiction over the matters set forth in Article 12 of the Plan and 11 U.S.C. § 1142.

Based upon the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** that:

1.     <u>Confirmation of Plan</u>. The Plan as modified herein is **APPROVED** and **CONFIRMED** under Bankruptcy Code § 1191(a) (consensual). A copy of the confirmed Plan is attached hereto as **Exhibit A**.  The Plan is valid and enforceable pursuant to its terms, and the terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

2.        <u>Modifications to the Plan</u>. The Plan has been modified as follows:

The claims by the Texas Workforce Commission ("TWC") will be treated as secured claims to be paid over 60 months from the petition date, with interest at 4.25%, with payments beginning 30 days from the Effective date.

A failure by the reorganized Debtor to make a payment to the TWC pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the TWC, the TWC may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the reorganized Debtor at:  3904 N. Texas Avenue, Bryan, TX 77803, Attn:  Rebecca E. Boenigk, and upon Debtor's attorney at:  Howley Law, PLLC, 711 Louisiana St., Suite 1850, Houston, TX  77002, Attn:  Eric Terry, Esq.; eric@howley-law.com. The Debtor shall be allowed to cure up to two (2) defaults.  Upon a third default, the TWC, at its option, may declare the default non-curable and proceed to collect the remainder of the debt.

Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtor or Reorganized Debtor, from any liability owed to the Texas Workforce Commission for a tax debt, including interest and penalties on such tax.  This provision is not an admission by any party that such liability exists.

Notwithstanding anything to the contrary in the Plan or in the Confirmation Order, nothing releases, discharges, or exculpates any person or entity other than the Reorganized Debtor from any liability to the United States.    The foregoing sentence is neither an admission nor denial by the Reorganized Debtor that it is liable to the United States.

Notwithstanding anything to the contrary, nothing herein shall exculpate the Debtor from liability under or otherwise impair the rights of an administrative creditor that complies with the post-petition agreements with the Debtor and complies with the Plan.

The Debtor is assuming (which assumption shall be final and not subject to later decisions to reject) the equipment lease with Huntington National Bank, the lessor as assignee from the original lessor De Lage Landen Financial Services, Inc.

Class 5 treatment is modified as follows:

5.5  <u>Class 5 – Unsecured Trade Claims of Creditors</u>.  Holders of Allowed Class 5 Claims shall receive their pro rata share of the Debtor's monthly disposable income for five years following the Effective Date. The first distribution to the holders of Class 5 claims will be made one year following the Plan Effective Date. Payments to holders of allowed Class 5 claims will be made to the address listed on the corresponding proof of claim filed in this case, or in the event no proof of claim was filed, the address listed in the Debtor's schedules. **Exhibit B**, attached to the

Confirmation Order, demonstrates that the Debtor will pay approximately $56,840.45 to the holders of Class 5 claims over a five-year period. The total amount of allowed Class 5 Claims is estimated to be approximately $890,000. Therefore, the projected distribution to Class 5 Claims is approximately 6.4%.

Notwithstanding anything in the Plan to the contrary, Ms. Boenigk's rate of compensation for the year 2022 shall be $120,500.00. Ms. Boenigk's rate of compensation shall only increase for cost of living adjustments until the $56,840.45 is paid to the Class 5 Creditors.

3.      Objections Overruled. All objections that have not been withdrawn, waived, or settled are **OVERRULED** on the merits.

4.      Authority.

a.   The Debtor and the Reorganized Debtor are authorized and empowered to take such actions and do all things as may be necessary or required to implement and effectuate the Plan and this Confirmation Order and the transfer to, and the vesting in, the Reorganized Debtor of the Assets.

b.   The Debtor, the Reorganized Debtor, and their respective directors, officers, agents, representatives, and attorneys are authorized, empowered, and ordered to carry out all of the provisions of the Plan, to issue, execute, deliver, file and record, as appropriate, any instrument, or perform any act necessary to implement, effectuate, or consummate the Plan and this Confirmation Order and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, including but not limited to the documents contained in the Plan Supplement, at ECF no. 98-1 (collectively, "Documents"), and to perform such other acts and execute and deliver such other Documents as are required by, consistent with and necessary or appropriate to implement, effectuate, or consummate the Plan and this Confirmation Order and the transfers contemplated thereby and hereby, all without the requirement of further application to, or order of, the Bankruptcy Court or further action by the Debtor's respective shareholders,

directors, or other beneficiaries, and with the like effect as if such actions had been taken by unanimous action of the respective shareholders, directors, partners, managers, members, or other beneficiaries of such entities.

c.    The Debtor, the Reorganized Debtor, and their respective directors, officers, agents, representatives, and attorneys are further authorized, empowered, and ordered to enter into and, if applicable, cause to be filed with the Secretary of State or other applicable officials of any applicable governmental authority any and all amended and/or restated certificates or articles of incorporation, organization, or formation or amendments to partnership agreements, operating agreements, or regulations and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Authorities with respect to compliance with Bankruptcy Code § 1123(a)(6).

d.    This Confirmation Order shall constitute all approvals and consents, if any, required by applicable state law, and all other applicable business organization, corporation, trust, and other laws of the applicable governmental authorities -other than the United States- with respect to the implementation and consummation of the Plan and all actions authorized by this Confirmation Order.

e.    Any manager or officer of the Debtor and the Reorganized Debtor is authorized to execute and perform, for and on behalf of the Debtor, any and all Documents and other instruments referred to in the foregoing clauses (b) and (c) and to certify or attest to any of the foregoing actions taken by the Debtor and Reorganized Debtor, respectively. The execution of any such Document or instrument or the taking of any such action by any manager or officer of the Debtor or the Reorganized Debtor shall be, and hereby is, deemed conclusive evidence of the authority of such action.

f.   As of the Effective Date, the Reorganized Debtor is hereby irrevocably appointed as the Debtor's attorney-in-fact (which appointment as attorney in-fact shall be coupled with an interest), with full authority in the place and stead of the Debtor and in the name of the Debtor to take any action and to execute any instrument that the Reorganized Debtor, in the Reorganized Debtor's discretion, may deem to be necessary or advisable to convey, transfer, vest, perfect, and confirm title of the Assets, including without limitation to issue, execute, deliver, file, and record such contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, and to file any claims, to take any action, and to institute any proceedings that the Reorganized Debtor may deem necessary or desirable in furtherance thereof.

5.      Settlements. Each settlement embodied in the Plan between the Debtor and holders of Claims and Interests is **APPROVED** in all respects.

6.      Continued Existence. The Reorganized Debtor shall continue to exist after the Effective Date in accordance with the applicable law in the applicable jurisdiction in which the respective Reorganized Debtor was formed under its certificates of formation or other formation documents, as applicable, and bylaws, operating agreements or similar organizational documents, as applicable, in effect before the Effective Date except as its certificates of formation or other formation documents and bylaws, operating agreements, or similar organizational documents may be amended in accordance with and to effectuate the Plan and this Confirmation Order.

7.      Plan Classification Controlling. The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions and payments to be made thereunder.

8.      Preservation of Causes of Action. The provisions of Article 7 of the Plan are hereby approved in their entirety. The Debtor and the Reorganized Debtor, as applicable, expressly

reserve all rights to prosecute any and all of their respective claims and causes of action against any Person, except as otherwise expressly provided in the Plan. Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtor, and the Reorganized Debtor, as applicable, expressly reserve all of their respective Causes of Action for later adjudication.

9.      <u>Debtor's Assets</u>. Except as otherwise set forth in the Plan or this Confirmation Order, on the Effective Date, the Assets shall be transferred and assigned to and shall vest in the Reorganized Debtor free and clear of all Liens and Claims and all rights, title, and interests except as expressly set forth in the Plan without any further action required on part of the Debtor. Except as otherwise set forth in the Plan, from and after the Effective Date, the Reorganized Debtor shall perform and pay when due liabilities under, or related to the ownership or operation of, the Assets.

10.      <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>. On the Effective Date, all executory contracts and unexpired leases that were not previously rejected, assumed, or assumed and assigned shall be, and hereby are, assumed in accordance with Article 11 of the Plan.

11.      <u>Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan</u>. Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court by no later than the earlier of (a) thirty (30) days after the Effective Date, or (b) thirty (30) days after the date of any Final Order approving a Debtor's rejection of such Executory Contract. Any Claim not Timely Filed shall be forever barred and may not be asserted against the Debtor, Reorganized Debtor, or their property or their Estate.  All Claims arising from the rejection of executory contracts and unexpired leases shall be treated as set forth in Section 11.5 the Plan. The Debtor shall, pursuant to Section

1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with Section 365 of the Bankruptcy Code, file and serve a pleading with the Court, within sixty (60) days after the Confirmation Date, listing the Cure Claims of all Executory Contracts or Unexpired Leases to be assumed. The non-debtor parties to such Executory Contracts and Unexpired Leases to be assumed by the Debtor shall have fifteen (15) days from service to object to the proposed Cure Claim identified by the Debtor. Except as provided otherwise, the Debtor shall retain its right to reject any of its Executory Contracts and Unexpired Leases, including contracts or leases that are subject to a dispute concerning the amount of the Cure Claim, until five (5) Business Days following the entry of a Final Order resolving an objection to the amount of the Cure Claim.

12.      _Authority_. All actions and transfers contemplated under the Plan, including but not limited to, any certificates, agreements or other documents or instruments to be executed in connection with the transfer and assignment of the Assets to the Reorganized Debtor shall be authorized upon entry of this Confirmation Order without the need of further approvals, notices or meetings of the Debtor's directors, officers, managers, and/or members.

13.      _Legal Binding Effect_. The provisions of the Plan shall bind all holders of Claims and Interests and their respective successors and assigns, whether or not they accepted the Plan.

14.      _Discharges, Releases, and Injunctions_. Except as modified in this Confirmation Order, the discharge and injunctions, moratoriums, and limitations of liability set forth in the Plan, including the Temporary Injunction in Article 14 of the Plan, are approved, and authorized in their entirety.  Because the Debtor's Plan is confirmed under 1191(a), on the Effective Date, the Debtor shall be discharged from any debt that arose before confirmation of this Plan except that the Debtor shall not be discharged of any debt imposed by this Plan.

15.     **EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THIS CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS SHALL BE AND ARE HEREBY PERMANENTLY RESTRAINED AND ENJOINED FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM AGAINST THE REORGANIZED DEBTOR OR THE ASSETS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING ON ACCOUNT OF ANY CLAIM BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE REORGANIZED DEBTOR OR THE ASSETS EXCEPT PURSUANT TO AND IN ACCORDANCE WITH THIS PLAN; (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST EITHER THE ASSETS OR THE REORGANIZED DEBTOR; (D) ASSERTING ANY CONTROL OVER, INTEREST, RIGHTS OR TITLE IN OR TO ANY OF THE ASSETS EXCEPT AS PROVIDED IN THIS PLAN; (E) ASSERTING ANY SETOFF, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE THE REORGANIZED DEBTOR AS ASSIGNEES, EXCEPT UPON LEAVE OF THE BANKRUPTCY COURT OR EXCEPT AS AUTHORIZED BY SECTION 553 OF THE BANKRUPTCY CODE; AND (F) PERFORMING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN; PROVIDED, HOWEVER, THAT THIS INJUNCTION SHALL NOT BAR ANY CREDITOR FROM ASSERTING ANY RIGHT GRANTED PURSUANT TO THIS PLAN; PROVIDED, FURTHER, HOWEVER, THAT EACH HOLDER OF A CONTESTED CLAIM SHALL BE**

**ENTITLED TO ENFORCE ITS RIGHTS UNDER THE PLAN, INCLUDING SEEKING ALLOWANCE OF SUCH CONTESTED CLAIM PURSUANT TO THE PLAN.**

16.        <u>Insurance</u>. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, neither the releases set forth in the Plan nor confirmation and consummation of the Plan shall have any effect on insurance policies of the Debtor or its current or former management (including, but not limited to, director and officer liability policies to the extent that the Debtor or its current or former management has any rights under such policies) in which the Debtor or its current or former management are or were an insured party or any claim asserted thereunder. Each insurance company is prohibited from denying, refusing, altering, or delaying coverage for the Debtor (or its current or former managers) on any basis regarding or related to the Debtor's Bankruptcy Case, the Plan, or any provision within the Plan, including the treatment or means of distribution set out within the Plan for insured Claims.

17.        <u>Exemption from Certain Taxes</u>. In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under the Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the transfer of title to or ownership of any of the Debtor's interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. Federal, state and/or local governmental officials or agents shall forgo the collection of any such tax or governmental

assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

18.       <u>Exemption from Securities Laws</u>. To the extent constituting securities under the 1933 Act, the Interests in the Reorganized Debtor offered, sold, issued and/or distributed pursuant to the Plan are deemed to have been offered, sold, issued and/or distributed pursuant to Bankruptcy Code § 1145. The offer, sale, issuance, and/or distribution of the Interests in the Reorganized Debtor pursuant to the Plan are and shall be exempt from the requirements of Section 5 of the Securities Act and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer, broker, or dealer thereof pursuant to Bankruptcy Code § 1145(a).

19.       <u>Management of the Reorganized Debtor</u>. The management of the Reorganized Debtor shall be as set forth in the Plan commencing as of the Effective Date.

20.       <u>Bar Date for Professional Compensation and Reimbursement Claims</u>. All professionals or other persons or entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date shall file and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses within thirty (30) days after the Effective Date. Any professional fees and reimbursements or expenses incurred by the Reorganized Debtor subsequent to the Effective Date may be paid without application to the Bankruptcy Court.

21.       <u>Reservation of Rights</u>. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained therein or the taking of any action by the Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor of

any kind, including with respect to the holders of Claims or Interests or as to any treatment or classification of any contract or lease.

22.      <u>Notice of Effective Date</u>. On or before five Business Days after the occurrence of the Effective Date, the Reorganized Debtor shall mail or cause to be mailed to all holders of Claims, Interests, and all other parties on the master service list via first class United States mail, postage prepaid, a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Reorganized Debtor deem appropriate or as may be ordered by the Bankruptcy Court.

23.      <u>Waiver or Estoppel</u>. Each Holder of a Claim or an equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or equity Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated, by virtue of an agreement made with the Debtor or its counsel, or any other Person, if such agreement was not disclosed in the Plan, papers filed with this Court prior to the Confirmation Hearing, on the record in the Confirmation Hearing or in this Confirmation Order.

24.      <u>Non-Occurrence of Effective Date</u>. If the Effective Date does not occur on or prior to 120 days after the Confirmation Date, then (a) the Plan shall be null and void in all respects, (b) settlements or compromises embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any documents or agreements executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

25.        References to Plan Provisions. The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety except as modified on the record in the Confirmation Hearing or in this Confirmation Order.

26.        Reversal. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

27.        Applicable Non-Bankruptcy Law. Pursuant to Bankruptcy Code §§ 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

28.        Modification of the Plan Prior to Substantial Consummation. After the Confirmation Date and prior to the Effective Date of the Plan, the Debtor may, under Bankruptcy Code § 1127(b), (i) amend the Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim, (ii) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure

Statement Order, or this Confirmation Order, and (iii) amend the Plan as may be necessary to carry out the purposes and effects of the Plan so long as such amendment does not materially or adversely affect the treatment of holders of Claims or Interests under the Plan; provided, however, prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

29.     _Conflicts between Plan and Confirmation Order_. If there is any conflict between the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

30.     _Severability of Plan Provisions_. Each term and provision of the Plan, as it may be altered or interpreted, is valid and enforceable pursuant to its terms.

31.     _Retention of Jurisdiction_. This Bankruptcy Court's retention of jurisdiction as set forth in the Plan is approved. Such retention of jurisdiction does not affect the finality of this Confirmation Order.

32.     _Nonseverable and Mutually Dependent_. The provisions of this Confirmation Order are nonseverable and mutually dependent.

33.     _Recordable Form_. This Confirmation Order shall be, and hereby is, declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any Case applicable governmental authority for filing and recording purposes without further or additional orders, certifications, or other supporting documents. Further, the Bankruptcy Court authorizes the Debtor or the Reorganized Debtor, as applicable, and any secured creditor, to file a memorandum of this Confirmation Order in any appropriate filing or recording office as evidence of the matters herein contained.

34.     The Debtor shall be the Disbursing Agent under the Plan. Debtor shall file a notice of substantial consummation pursuant to section 1183(c)(2).  Upon substantial consummation of

the Plan, the duties of the Trustee in the Debtor's bankruptcy case shall terminate as provided under 11 U.S.C. § 1183(c)(1). The Trustee shall complete any remaining duties under 11 U.S.C. § 1183(b)(1) and (4) up to the time of his discharge, including making a final report ("Final Report") and filing a final account of the administration of the Debtor's bankruptcy estate with the Court and the U.S. Trustee. The Debtor shall file with the Bankruptcy Court operating reports in a form satisfactory to the U.S. Trustee on a quarterly basis until this Chapter 11 case is closed.

Signed:  March 02, 2022

Christopher Lopez
United States Bankruptcy Judge

.

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO.   21-60086 |
| NEUTRAL POSTURE, INC., | § | |
| | § | CHAPTER 11 PROCEEDING |
| Debtor | § | SUBCHAPTER V |

# DEBTOR'S PLAN OF REORGANIZATION

### IMPORTANT DATES

Date by which Ballots must be received: **February 25th, 2022.**

Date by which Objections to Confirmation of the Plan must be filed and served **February 25th, 2022.**

Hearing on confirmation of the Plan: **March 2nd, 2022 at 9:00 a.m.** (Prevailing Central Time)

**HOWLEY LAW PLLC**

/s/ *Eric B. Terry*
Tom A. Howley, State Bar No. 24010115
Eric B. Terry, State Bar No. 00794729
**HOWLEY LAW PLLC**
Pennzoil Place – South Tower
711 Louisiana Street Suite 1850
Houston, Texas 77002
Phone: 713-333-9125
Email:    tom@howley-law.com
              eric@howley-law.com
**COUNSEL FOR THE DEBTOR**

**NEUTRAL POSTURE, INC.** Debtor and Debtor-in-Possession, proposes this Plan of Reorganization. As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

ALL INTERESTED PARTIES SHOULD READ THIS DOCUMENT CAREFULLY AND DISCUSS IT WITH THEIR LEGAL AND FINANCIAL ADVISORS.

THE PLAN MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE PLAN, YOU SHOULD IMMEDIATELY CONTACT THE DEBTORS TO RESOLVE THE DISPUTE. IF YOU AND THE DEBTORS CANNOT AGREE, YOU MUST FILE AND SERVE ANY OBJECTION ON OR BEFORE **FEBRUARY 25TH, 2022**. IF YOU DO NOT FILE A TIMELY RESPONSE, THE PLAN MAY BE APPROVED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE PLAN AND HAVE NOT REACHED AN AGREEMENT WITH THE DEBTORS, YOU MUST ATTEND THE CONFIRMATION HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE BANKRUPTCY COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY CONFIRM THE PLAN AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

## ARTICLE 1

## DEFINITIONS AND RULES OF CONSTRUCTION

1.1     **Definitions.** Applicable definitions contained in the Bankruptcy Code are incorporated into the Plan except as modified in this Article I. The following definitions shall have the meanings as specified herein, and shall be designated, when such special definitions are applicable, with capital letters, and these definitions shall be enforceable as terms of the Plan in conjunction with the respective matters to which they reference or define:

1.1.1     "Administrative Expense Claim" or "Administrative Claim" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case Allowed pursuant to sections 503(b) or 507 of the Bankruptcy Code including, without limitation (a) any fees or charges assessed against a Debtor's Estate under 28 U.S.C. § 1930, and (b) other Administrative Expense Claims as may be ordered and Allowed by the Bankruptcy Court.

1.1.2     "Allowed" or "Allowed Claim" means: (a) a Claim that: (i) has been  listed by the Debtor in its Schedules as other than disputed, contingent or unliquidated; and (ii) is not otherwise a Disputed Claim; (b) a Claim (i) for which a proof of Claim or request for payment of Administrative Expense Claim has been filed by the applicable Bar Date or  otherwise has been

deemed timely filed under applicable law; and (ii) that is not otherwise a Disputed Claim; or (c) a Claim that is allowed: (i) in any stipulation executed by the Debtor and the Claim holder; (ii) in a Final Order; or (iii) pursuant to the terms of the Plan.

1.1.3    "Avoidance Actions" means causes of action arising under chapter 5 of the Bankruptcy Code or under related state or federal statutes or common law, including fraudulent conveyance laws, whether or not litigation has been commenced to prosecute such causes of action which are expressly preserved for the Estate hereunder.

1.1.4    "Ballot" means the form or forms distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

1.1.5    "Bankruptcy Code" or "Code" means Title 11, United States Code, Section 101 et. seq., in effect on the Filing Date, and all amendments thereto and in effect on or before the Confirmation Date, or thereafter to the extent such amendments are retroactive.

1.1.6    "Bankruptcy Rules" means collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, in effect on the Filing Date, and all amendments thereto and in effect on or before the Confirmation Date, or thereafter to the extent such amendments are retroactive.

1.1.7    "Bar Date" means the applicable bar date by which a Proof of Claim or request for payment of an Administrative Expense Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including the Bar Date Order or the Confirmation Order.

1.1.8    "Business Day" means a day other than a Saturday, Sunday, or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

1.1.9    "Cash" means legal tender of the United States of America.

1.1.10    "Chapter 11 Case" or "Case" means the Chapter 11 Case styled as In re: Neutral Posture, Inc., Case No. 21-60086 CL, commenced on November 1, 2021, in the United States Bankruptcy Court for the Southern District of Texas.

1.1.11    "Chase" means JPMorgan Chase Bank, N.A.

1.1.12    "Chase Loan Documents" means all loan documents related to the Chase Pre-Petition Secured Claim, including but not limited to: (a) as to Loan No. ending 8001, that certain Promissory Note executed by Neutral Posture, Inc. in favor of JPMorgan Chase Bank, N.A. dated June 20, 2013 in the original principal amount of $1,500,000, which was subsequently replaced, renewed and/or extended and is secured by, without limitation, the Credit Agreement dated January 18, 2018, the Continuing Security Agreement dated January 18, 2018, as well as the Term Note, Credit Agreement, and Deed of Trust, Assignment of Leases and Rents, Security and Financing Agreement dated June 14, 2019, and the guarantors Rebecca E. Boenigk and Jaye E. Congleton also each executed a Continuing Guaranty dated January 18, 2018; (b) as to Loan No. ending 8002, that certain Promissory Note executed by Neutral Posture, Inc. in favor of JPMorgan

Chase Bank, N.A. dated June 20, 2013 in the original principal amount of $1,280,000, as evidence of a Commercial Mortgage Loan which was subsequently modified by Change in Terms of Agreement dated June 14, 2019 and is secured by, without limitation, Deed of Trust, Assignment of Leases and Rent, Security Agreement and Financing Statement dated June 20, 2013, and the guarantors Rebecca E. Boenigk and Jaye E. Congleton also each executed a Continuing Unlimited Guaranty dated June 20, 2013; (c) as to Loan No. ending in 8014, that certain Promissory Note executed by Neutral Posture, Inc. in favor of JPMorgan Chase Bank, N.A. dated March 30, 2015 in the original principal amount of $1,000,000 which was subsequently modified by Change in Terms of Agreement dated June 14, 2019; and (d) as to Loan No. ending in 8015, that certain Promissory Note executed by Neutral Posture, Inc. in favor of JPMorgan Chase Bank, N.A. dated April 9, 2015 in the original principal amount of $500,000 which was subsequently modified Change in Terms of Agreement dated June 14, 2019 and is secured by, without limitation, the Commercial Security Agreement dated April 9, 2015.

1.1.13    "Chase Pre-Petition Secured Claim" means all amounts due under the following loans: Loan No. ending 8001 in the original principal amount of $1,500,000; Loan No. ending 8002 in the original principal amount of $1,280,000; Loan No. ending 8014 in the original principal amount of $1,000,000; and Loan No. ending 8015 in the original principal amount of $500,000.

1.1.14    "Claim(s)" means a "claim" against the Debtor, as defined in Section 101(5) of the Bankruptcy Code.

1.1.15    "Claim Objection Deadline" means the later of (a) sixty (60) days after the Effective Date and (b) such later date as may be ordered by the Bankruptcy Court pursuant to a motion filed prior to the expiration of such sixty (60) day period.

1.1.16    "Class" or "Classification" means the particular class designated in the Plan, pursuant to Section 1122 and Section 1129 of the Bankruptcy Code, into which the Claims of all Creditors or Equity Interests have been segregated for purposes of voting and distributions.

1.1.17    "Collateral" means any Property or interest in Property of the Estate which is subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code, disallowance under Section 506 of the Bankruptcy Code, or is otherwise invalid under the Bankruptcy Code or applicable state law.

1.1.18    "Confirmation" or "Confirmation of the Plan" means the approval of this Plan by the Bankruptcy Court at the Confirmation Hearing.

1.1.19    "Confirmation Date" means the date on which the clerk dockets a Confirmation Order determining that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code, which order has been previously entered by the Court.

1.1.20    "Confirmation Hearing" means the hearing(s) which will be held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

1.1.21    "Confirmation Order" means the order of the Bankruptcy Court confirming the

Plan.

1.1.22      "Court" or "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over the Chapter 11 Case, or, if necessary, the United States District Court for the District and Division having original jurisdiction over the Chapter 11 Case.

1.1.23      "Creditor(s)" means all creditors of the Debtor holding Claims for debts, liabilities, demands or Claims of any character whatsoever, as defined in Section 101(5) of the Bankruptcy Code.

1.1.24      "Cure Claim" means any Claim based upon the Debtor's defaults under any Executory Contract to which the Debtor was a party on the Filing Date which has been or will be assumed under Section 365 of the Bankruptcy Code or pursuant to the Plan.

1.1.25      "Debtor" "Debtor in Possession" or "Neutral Posture, Inc." means Neutral Posture, Inc., a Texas corporation.

1.1.26      "Deficiency Claim" means, with respect to a Secured Claim, the amount by which the Allowed Claim exceeds the sum of (i) any set off rights of the holder of such Claim against the Debtor under Sections 506 and 553 of the Bankruptcy Code and (ii) the net proceeds realized from the disposition of the Collateral securing such Claim or, if such Collateral is not liquidated, the value of the interests of the holder of the Claim in the Debtor's interest in the Collateral securing such Claim, as determined by the Bankruptcy Court in accordance with Section 506 of the Bankruptcy Code; provided, however, that if the holder of such Claim makes the election provided for in Section 1111(b)(2) of the Bankruptcy Code, there shall be no Deficiency Claim in respect of such Claim.

1.1.27      "Disallowed" means, with respect to a Claim, Interest, Administrative Expense, or portion thereof, that it is determined by a Final Order that the Claim, Interest, Administrative Expense, or portion thereof is not allowed under sections 502 or 503 of the Bankruptcy Code.

1.1.28      "Disbursing Agent" means the Reorganized Debtor.

1.1.29      "Disposable Income" means "the income that is received by the debtor that is not reasonably necessary to be expended . . . for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor."

1.1.30      "Disputed Claim" means (i) a Claim, Interest or Administrative Expense that is subject to a pending objection; or (ii) until the Objection Deadline:

         (a) a Claim for which a corresponding Claim has not been listed in the Debtor's Schedules or for which the corresponding Claim is listed in the Debtor's Schedules with a differing amount, with a differing classification, or as a disputed, contingent, or unliquidated Claim;

(b) a Claim which a Debtor in good faith believes is held by a holder either (i) from which property is recoverable by the applicable Debtor under any of sections 542, 543, 550 or 553 of the Bankruptcy Code or (ii) that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code unless the holder has paid the amount, or turned over any such property for which such holder is liable under the terms of sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; and

(c) an Interest for which a corresponding Interest has not been listed in the Debtor's List of Equity Interests or has been listed in a different number (to the extent of such difference).

1.1.31    "Disputed Claim and Administrative Reserve" means the Cash reserve to be established pursuant to Section [9.7] of the Plan, in an amount sufficient to satisfy in full, once Allowed, the Claims of holders of: (i) Disputed Claims, (ii) Administrative Expense Claims, (iii) Professional Fee Claims, and (iv) the costs and expenses of administering the Chapter 11 Cases from the Effective Date until the time the Chapter 11 Cases are closed.  For sake of clarity, only Allowed Claims will be paid out of the Disputed Claim and Administrative Reserve.

1.1.32    "Effective Date" means the first Business Day following fourteen (14) days after the Confirmation Date on which all conditions to the effectiveness of this Plan specified in Section 8 have been met or waived.

1.1.32    "Equity Interest(s)" or "Interest(s)" means all of the common stock in the Debtor and all warrants, options or other rights associated with those securities.

1.1.33    "Estate" means the estate created pursuant to section 541 of the Bankruptcy Code by the commencement of the Chapter 11 Case.

1.1.34    "Executory Contract" shall have the meaning assigned in Section 365 of the Bankruptcy Code.

1.1.35    "Filing Date" or "Petition Date" means November 1, 2021, the date upon which the Chapter 11 Case was commenced as a voluntary bankruptcy case.

1.1.36    "Final Decree" means the order of the Court entered after the Plan is substantially consummated which closes the Chapter 11 Case.

1.1.37    "Final Order" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have

been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment..

1.1.38    "Impaired Class" and "Unimpaired Class" shall have the meaning described in Section 1124 of the Bankruptcy Code.

1.1.39    "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.1.40    "Objection Deadline" means the deadline for Reorganized Debtor to file objections to Claims with the Bankruptcy Court established in Article 9 of this Plan.

1.1.41    "Person" means an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, or entity of whatever nature.

1.1.42    "Plan" means Debtor's Plan of Reorganization in its present form or as it may be amended, modified, or supplemented from time to time, together with all exhibits thereto.

1.1.43    "Plan Supplement" means, including without limitation, the forms of the material documents to implement the provisions of the Plan that are to be filed with the Bankruptcy Court as early as is practicable, but in no event later than five (5) Business Days before the Confirmation Hearing, or on such other date as the Bankruptcy Court may determine. The Plan Supplement is incorporated into the Plan as if fully set forth in the Plan and all references to the Plan refer also to the Plan Supplement.

1.1.44    "Priority Claim" means any Claim (or portion of such Claim) entitled to priority under Section 507 of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, or a Secured Claim.

1.1.45    "Priority Secured Tax Claim" means a Secured Claim of a governmental entity whose claim would be a Priority Tax Claim under Sections 502(i) or 507(a) of the Bankruptcy Code if it was not a Secured Claim.

1.1.46    "Priority Tax Claims" means a Claim that is entitled to priority pursuant to Sections 502(i) or 507(a)(8) of the Bankruptcy Code other than (i) a Secured Tax Claim, or (ii) an ad valorem or other form of state or local authority tax assessed on property which was transferred or foreclosed prior to the Confirmation Date.

1.1.47    "Professional" means any professional employed in the Chapter 11 Case pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code or otherwise, and any professional seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b) of the Bankruptcy Code.

1.1.48    "Professional Fee Claim" means a Claim of a Professional for compensation for services rendered, and/or reimbursement of costs and expenses incurred, after the Filing Date and prior to and including the Effective Date.

1.1.49    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

1.1.50    "Property" or "Property of the Estate" means all assets of Debtor which are property of the Estate pursuant to Section 541 of the Bankruptcy Code.

1.1.51    "Pro Rata Share" means with respect to Claims, the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Claims in such Class, exclusive of Disallowed Claims, but including Disputed Claims.

1.1.52    "Reorganized Debtor" or "Reorganized Neutral Posture" means. Neutral Posture, Inc., on and after the Effective Date, surviving after confirmation of the Plan.

1.1.53    "SBA" means United States Small Business Administration.

1.1.54    "SBA Pre-Petition Secured Claim" includes a loan outstanding in the principal amount of $500,000.00 tied to the COVID-19 Economic Injury Disaster Loan program implemented by the U.S Small Business Administration.

1.1.55    "Schedules" and "Statements" means the Schedules, Statements and Lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

1.1.56    "Secured Claim" means the Claim of any Creditor which is secured by a valid, duly perfected Lien (whether voluntary or involuntary) on, or a security interest in Collateral, or which is subject to setoff under Bankruptcy Code Section 553, to the extent of the lesser of: (i) the value of the Collateral; or (ii) the amount of such Allowed Claim.

1.1.57    "Subchapter V Trustee" means Jarrod Martin, or his successor appointed to serve as trustee pursuant to section 1183 of the Bankruptcy Code.

1.1.58    "T2W" means T2W, LLC.

1.1.59    "T2W Pre-Petition Secured Claim" includes the indebtedness arising from three loans in the aggregate original principal amount of $1,250,000.00, secured by a second, third and fourth deed of trust mortgage liens on the real estate and the Debtor's personal property.

1.1.60    "Timely Filed" with respect to a Claim, Interest or Administrative Expense, means, that a proof of such Claim or Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court within such applicable period of time fixed by the Plan, statute, or pursuant to both Bankruptcy rule 3003(c)(3)and a Final Order (e.g., the Bar Date).

1.1.61 "Trade Claims" means a Claim held by a Creditor arising on account of labor performed for, or services, materials, goods or equipment furnished and billed or invoiced to, the Debtors in the ordinary course of business, other than a claim for professional services.

1.1.62 "United States Trustee" means the United States Trustee for the Southern District of Texas.

1.1.63 "Unsecured Claim" means any Claim (regardless of whether such Claim is covered by insurance) that is neither secured nor entitled to priority under the Bankruptcy Code, or by a Final Order of the Bankruptcy Court, including, but not limited to: (a) any claim arising from the rejection of an Executory Contract under section 365 of the Bankruptcy Code, and (b) any portion of a Claim to the extent the value of the holder's interest in the applicable Estate's interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.1.64 "Unsecured Creditor" means all holders of Unsecured Claims other than holders of Allowed Deficiency Claims.

## 1.2 Rules of Construction.

(a) Interpretation. Unless otherwise specified herein, all section, article and exhibit references in the Plan are to the respective section in, article of, and exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. All headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

(b) Construction and Application of Bankruptcy Code Definitions. Unless otherwise defined herein, words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan. Words or terms used but not defined herein shall have the meanings ascribed to such terms or words, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

(c) Other Terms. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan.

(d) Time. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

# ARTICLE 2

## 2.1 **Background**

On January 1, 1989, the Debtor was started by Rebecca E. Boenigk in her garage. With an initial investment of $20,000.00, the Debtor manufactured chairs and served as the sole shareholder. In January 1992, Jaye E. Congleton joined the company with a $30,000.00 investment for a fifty percent ownership stake. In 1997, the Debtor went public on the NASDAQ and remained public until 2001 when the Debtor was taken private again.

During the past 30 years there have been many changes and pivots in the company all with the desired goal of efficiency, profitability and being a good corporate citizen in the community. The Debtor started out as a bad back chair company making suitable chairs for individuals with medical issues. The Debtor has since expanded to manufacture seating for any work situation.

The Debtor acquired another seating company in 1998 and also purchased a system furniture division in 2014 as part of its strategic growth initiatives. Currently, the product line includes everything needed for a complete office. It includes high performance, ergonomic seating; task, executive, conference and guest seating; healthcare, lab and industrial seating; specialty seating; ergonomic workplace accessories such as monitor arms, keyboard trays, antifatigue mats and footrests; sit/stand solutions; systems furniture including cubicles, worksurfaces, storage, filing, tables, conference and training room furniture; and height adjustable tables.

The Debtor currently employs 47 individuals and puts an emphasis on being a value-added member of the Bryan/College Station community. For example, Ms. Boenigk and her husband brought the Ronald McDonald House to Bryan/College Station and Ms. Boenigk has chaired the auction committee for 7 years. The Debtor has supported over 100 local charitable organizations and schools by either donating money or product for their auctions. The Debtor has also provided school supplies to current employees for over 20 years. The Debtor also provides paid time off for employees that are doing charitable work in the community. Many of the Debtor's employees have been with the Debtor for an extended period of time and the turnover rate is much lower than the standard in the industry.

The Debtor serves customers across the United States, Puerto Rico, Canada, China, India and the Middle East. Customers include the federal government, state and local governments, universities, corporations and small businesses. The Debtor sells inventory through a nationwide network of sales representatives and dealers. The Debtor's sales representatives provide a full line of services, including ergonomic assessment, training, design, delivery and installation. The Debtor's dealers provide project management, design and installation as well as quotes for our government and commercial customers. The sales representatives and dealers are an integral part of our sales plan and the Debtor would not be able to generate sales without them.

Ms. Boenigk served as the auction chair for the local American Cancer Society for 6 years and raised over $1 million for them. She currently serves as the treasurer for Women Impacting Public Policy (an organization that represents over 15 million women owned small businesses). She served on the Board of Directors of the Women's Business Enterprise National Council for 11 years representing women business owners nationwide. She was appointed by the Administrator of the Small Business Administration to serve on the National Women's Business Council from 2006 to 2009. She has testified before Congress on 2 separate occasions regarding taxes on small businesses and competition from the federal prison industry. Finally, she was elected as the first woman president of an industry association (the Business and Institutional Furniture Manufacturers Association) and she still serves on the Board.

## 2.2   **Events Leading Up To Bankruptcy**

The Debtor has been impacted by the global pandemic caused by COVID-19. Buying patterns from clients, especially corporations and government entities, changed significantly as a result of the pandemic. The Debtor began experiencing a decline in customer orders in 2020 and this malaise continued until recently.

This downward trend in revenue caused serious strain on the underlying business and its ability to service its secured loans with Chase Bank. As a result, the Debtor initiated numerous conversations either directly or through counsel in an attempt to restructure and amend the existing loans with Chase Bank. All of the standalone proposals were rejected. The only proposal that was considered by Chase Bank was tied to a sale leaseback transaction regarding the building and unfortunately the investor walked away from the deal.

On October 8, 2021, counsel for Chase Bank sent out a notice of foreclosure related to the real estate owned by the Debtor. This notice immediately chilled the Debtor's efforts to locate a third-party investor with regard to the real estate. If the foreclosure proceeded, 47 individuals would be out of a job and a 33-year old company that is a valued member of the Bryan/College Station community would cease to exist.

Given the foreclosure notice the Debtor had no option but to invoke the automatic stay protection of this Court to pursue a successful reorganization of the business pursuant to 11 U.S. Code, **Subchapter V** – Small Business Debtor Reorganization provisions. The Debtor is just starting to turn the corner here and the forecast is getting better. Customer orders have increased recently and are trending in the right direction. Sales for 2021 will be lower than 2020 by 13%. Many logistical and supply chain issues tied to the pandemic still present a challenge.

The Debtor currently has four outstanding loans with Chase Bank with different sets of collateral: (a) a promissory note dated June 20, 2013 in the original principal amount of $1,280,000, as amended from time to time, with a first priority lien deed of trust on real estate and a lien on personal property; (b) a promissory note dated June 20, 2013 in the original principal amount of $1,500,000, as amended from time to time, with a deed of trust on the real estate and a

lien on the personal property of the Debtor; (c) a promissory note dated March 30, 2015 in the original principal amount of $1,000,000, as amended from time to time, with a lien on personal property; and (d) a promissory note dated April 9, 2015 in the original principal amount of $500,000, as amended from time to time, with a lien on personal property. These loans are guaranteed personally by Ms. Boenigk and her mother. Approximately 2 years ago, Chase Bank requested that the Debtor move its accounts outside of Chase Bank. As a result, all of the Debtor's cash as of the petition date is deposited with Amarillo National Bank and Chase Bank does not have a deposit account control agreement in place.

The Debtor also has three loans in the aggregate original principal amount of $1,250,000.00 secured by a second, third and fourth duly perfected deed of trust mortgages liens on the real estate and a valid, duly perfected security interest and lien on all personal property of the Debtor.

The Debtor also has a loan outstanding in the principal amount of $500,000.00 tied to the COVID-19 Economic Injury Disaster Loan program implemented by the U.S Small Business Administration.

As of the petition date, the Debtor owed approximately $1,250,000 to vendors and third-party providers incurred in the ordinary course of its business.

Certain critical vendors have been paid pursuant to court order reducing the amount of unsecured debt to approximately $890,000.

## 2.3     Description Of Assets

The Debtor filed schedules of all of its assets and liabilities on the Petition Date. Complete copies of the schedules are available from the Clerk of the Court. The primary assets of the bankruptcy estate, their estimated values and associated liens are as follows:

| ASSET | VALUE AT PETITION DATE |
|---|---|
| Cash | $373,448.40 |
| Accounts Receivable | $981,356.00 |
| Inventory | $239,045.00 |
| Equipment | $313,705.00 |
| Real Property | $2,700,000.00 |
| Intellectual Property | Unknown |
| Other (Unliquidated Claims and Causes of Action) | Unknown |
| **Total** | $4,607,554.40 |
| **Secured Debt** | |
| Pre-Petition Liens | $4,700,000.00 |

### 2.4 Liquidation Analysis

Under sections 1191 and 1129(a)(7) of the Bankruptcy Code a plan can be confirmed without the accepting votes of impaired classes of claims as long as each such class would receive under the plan "not less than" they would receive "if the debtor were liquidated under chapter 7."

If this case were converted to chapter 7 and the assets of the Debtor liquidated Such a liquidation would destroy the going-concern value of this business because it would require the cessation of business operations and termination of all employees. The Debtor would not be able to fulfill its commitments to its customers and would default in its orders to those customers. Its accounts receivable would be impaired as those customers would offset their damages against any amounts owed to the Debtor. The Debtor's inventory would be liquidated for a fraction of its cost. Ultimately, there may not be sufficient asset value to pay the Debtor's secured creditors and other creditors and equity interest holders would receive nothing on account of their claims and interest.

### 2.5 Sources Of Income

The Debtor's sole source of income is from the sale of products primarily to large retailers, but additional revenue is derived from direct to customer sales. For the period from 2019 through the petition date in 2021, the Debtor's gross revenue was as follows:

| YEAR | GROSS REVENUE |
|------|---------------|
| 2021 | $7,911,424.00 |
| 2020 | $9,092,461.00 |
| 2019 | $9,711,505.00 |

### 2.6 Projection Of Disposable Income

The Debtor is just starting to turn the corner here and the forecast is getting better. Customer orders have increased recently and are trending in the right direction. Sales for 2021will be lower than 2020 by 13%. Many logistical and supply chain issues tied to the pandemic still present a challenge.

The Debtor's projections demonstrate the disposable income paid on a yearly basis to the holders of claims in Class 5 are attached as **Exhibit A**.

### ARTICLE 3

### CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.1 Claims and Equity Interests Classified. In order to make the Plan easier to understand, to aid in the Plan balloting process and for all confirmation matters, all Claims (except Priority Claims and Priority Tax Claims) and Equity Interests shall be classified as set forth in this Article

2 of the Plan.

**3.2** **Priority Claims and Priority Tax Claims**. Section 1123(a)(1) of the Bankruptcy Code provides that Priority Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan. All such Claims are to be treated separately as unclassified Claims on the terms set forth in Article 3 of the Plan.

**3.3** **Classes of Claims and Equity Interests.** The Plan classifies Claims and Equity Interests as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| N/A | Priority Non-Tax Claims | N/A | No |
| N/A | Priority Tax Claims | N/A | No |
| Class 1 | Administrative Expense Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Chase Pre-Petition Secured Claim | Impaired | Yes |
| Class 3 | T2W, LLC Pre-Petition Secured Claim | Impaired | Yes |
| Class 4 | SBA Pre-Petition Secured Claim | Unimpaired | No |
| Class 5 | Unsecured Trade Claims of Creditors | Impaired | Yes |
| Class 6 | Equity | Unimpaired | No (deemed to accept) |

**3.4** **Impairment Controversies**. All controversies as to whether a Class of Claims or Equity Interests are impaired under the Plan shall be resolved by the Bankruptcy Court after notice and hearing.

## ARTICLE

## TREATMENT OF UNCLASSIFIED CLAIMS

**4.1** **Priority Claims**. Except to the extent that a holder of an Allowed Priority Claim and the Debtor agree to a different treatment, each holder of an Allowed Priority Claim will receive in full satisfaction of such Claim, Cash payments from Reorganized Debtor on the later of tenth Business Day of the first month following the Effective Date or 30 days after such claim becomes an Allowed Claim.

**4.2** **Priority Tax Claims**. Except to the extent that a holder of an Allowed Priority Tax Claim and the Debtor agree to a different treatment, each holder of an Allowed Priority Tax Claim will receive in full satisfaction of such Claim, Cash payments from Reorganized Debtor over a period not exceeding five (5) years from the Petition Date. Payments by Reorganized Debtor provided

for herein shall be made in equal monthly installments with the first payment due on the tenth Business Day of the first month following the Effective Date. Interest shall accrue on the Priority Tax Claim in accordance with section 511 of the Bankruptcy Code. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due. To the extent the holder of an Allowed Priority Tax Claim has a Lien on the Debtor's property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full.

## ARTICLE 5

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS UNDER THE PLAN

**5.1**     Class 1 - Administrative Expense. All Administrative Expense Claims against the Debtor shall be treated as follows:

5.1.1     Time for Filing. All holders of Administrative Expense Claims, other than Professional Persons holding Professional Fee Claims, shall file with the Bankruptcy Court a request for payment of such Claims within thirty (30) days after the Effective Date. Any such request must be served on the Debtor, its' counsel and all parties requesting notice in the Bankruptcy Case, and must, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim; (ii) the amount of the Administrative Expense Claim; and (iii) the basis for the Administrative Expense Claim. A failure to file any such request in a timely fashion will result in the Administrative Expense Claim in question being discharged and its holder forever barred from asserting such Administrative Expense Claim against the Debtor or the Reorganized Debtor.

5.1.2     Allowance. An Administrative Expense Claim for which a request for payment has been properly filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is thirty (30) days after a request for payment of such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

5.1.3     Payment. Except to the extent (i) that a holder of an Allowed Class 1 Claim and the Debtor agree to a different treatment or (ii) existing agreements between the Debtor and the holder of a Class 1 Claim provide for payment of such Allowed Class 1 Claims on different terms, in which case such Claim shall be satisfied in accordance with those pre- existing agreements or policies, each holder of an Allowed Claim in Class 1 shall receive a Cash payment from the Reorganized Debtor in the amount of the Allowed Class 1 Claim on the later of tenth Business Day of the first month following the Effective Date or 30 days after such claim becomes an Allowed Claim.

5.1.4     Professional Fee Claims. Every Professional Person holding a Professional Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order shall file a final application for payment of fees and reimbursement of expenses no later than the date that is thirty (30) days after the Effective Date; provided, however, that a Professional Person may supplement its request up to and including the date of the hearing

on such request to account for fees and expenses incurred following the Effective Date in connection with, among other things, preparation of the request for allowance of such Professional Fee Claim, attendance at the hearing thereon and any other allowable fees or expenses not previously requested. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The last date to object to any final fee application shall be the twenty-first (21st) day after such fee application has been filed with the Bankruptcy Court. Allowed Professional Fee Claims shall be paid in full in Cash by the Reorganized Debtor from Cash on hand or from operating Cash flow on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) three (3) days after entry of an Order by the Bankruptcy Court allowing such Professional Fee Claim. On or as soon as reasonably practicable after the Effective Date, to the extent not already paid, each holder of an Allowed Claim in Class 1 shall receive Cash in the amount of the Allowed Class 1 Claim, except to the extent that: (i) the holder of a Class 1 Claim and the Debtor agree to different treatment; or (ii) existing agreements between the Debtor and the holder of a Class 1 Claim provide for payment of such Allowed Class 1 Claims on different terms, such Claims shall be satisfied in accordance with those pre- existing agreements or policies.

**5.2** **Class 2 – Chase Pre-Petition Secured Claim**. The Allowed Class 2 Claim shall be Allowed as a secured claim in the amount of $3,096,988.30, as of the Petition Date, plus all allowable attorneys' fees after the Petition Date under 11 U.S.C. § 506(b). As provided by Section 9.4 of this Plan, no post-petition, pre-effective date interest shall be paid on such allowed secured claim. The schedule of interest rates, monthly payment amounts, and term set forth on **Exhibit A** shall govern the repayment schedule for the Allowed Class 2 Claim. Payments on the Allowed Class 2 Claim shall commence on the 1st day of the month following sixty (60) days after the effective date of the Plan and continue on the 1st day of each month thereafter for a seven (7) year term. All accrued and unpaid amounts due and owing on the Allowed Class 2 Claim shall be paid in full at on the 1st day of the 85th month following the Effective Date.

Notwithstanding any other provision of this Chapter 11 Plan, including but not limited to Section 7.7, the Allowed Class 2 Claim shall continue to be secured by a Lien on the Reorganized Debtor's property to the same extent, validity and priority as existed prepetition, and shall remain in full force and effect until the Allowed Class 2 Claim is paid in full. The respective rights and obligations of the parties shall continue to be governed by the Chase Loan Documents except as expressly modified by this Section 5.2. Chase may apply payments received pursuant to this Section 5.2 to any amounts due and outstanding on the Allowed Class 2 Claim in its sole and absolute discretion. In the event of a default of the terms of this Chapter 11 Plan or the Chase Loan Documents, Chase shall be entitled to exercise any and all of its rights and remedies under the Bankruptcy Code, this Chapter 11 Plan, and applicable non-bankruptcy law, including but not limited to those under the Chase Loan Documents.

**5.3** **Class 3 – T2W, LLC Pre-Petition Secured Claim**. The Allowed Class 3 Claim shall be Allowed as a secured claim in the amount of **$970,773.24**. The holder of the Allowed Class 3 Claim shall receive a Consolidated and Restated Promissory Note ("T2WConsolidated Note"), which shall provide for the payment terms described therein which shall track the interest and monthly payment terms set forth in the attached **Exhibit A,** with the initial payment to occur on the sixtieth (60th) day after the Plan Effective Date. The T2W Note shall include 84 monthly payments ("Term"), with all unpaid and accrued principal, interest, fees and costs due and payable

at the end of the Term ("Balloon"). The Debtor reserves the right to pay the allowed secured clam of T2W sooner without penalty. T2W shall retain all prepetition liens, which shall remain in full force and effect postpetition until the indebtedness is paid in full. To secure repayment of the T2W Consolidated Note, the Debtor shall deliver an Amended and Restated, Consolidated Deed of Trust and Assignment of Rents ("T2W Deed of Trust") and a Security Agreement ("T2W Security Agreement") and related loan instruments to T2W. The form of the T2W Consolidated Note, T2W Deed of Trust, and T2W Security Agreement and related loan documents shall be filed by the Debtor with the Plan Supplement. Such loan documents shall include all terms customarily included in commercial loan documents, including, but not limited to covenants prohibiting the Debtor from incurring additional debts or disposing of its assets without the consent of either Chase or T2W. The Allowed Class 3 Claim of T2W includes all principal and interest owing under the three notes as of the Petition Date PLUS attorneys' fees and costs as provided by the pre-petition loan agreements in an amount of $15,000.00. T2W shall not be required to file an application for approval of its attorneys' fees pursuant to Section 506 of the Bankruptcy Code.

**5.4** **Class 4 – SBA Pre-Petition Secured Claim.** The Allowed Class 4 Claim shall be an allowed secured claim in the amount of $500,000.00 which claim shall be reinstated and paid on the same terms as existed prepetition. The first payment shall commence in May, 2022 unless otherwise extended. All prepetition liens of the SBA shall remain in full force and effect postpetition until the indebtedness is paid in full.

**5.5** **Class 5 - Unsecured Trade Claims of Creditors**. Holders of Allowed Class 5 Claims shall receive their pro rata share of the Debtor's monthly disposable income for three years following the Effective Date. The first distribution to the holders of Class 5 claims will be made one year following the Plan Effective Date. Payments to holders of allowed Class 5 claims will be made to the address listed on the corresponding proof of claim filed in this case, or in the event no proof of claim was filed, the address listed in the Debtor's schedules. Exhibit A demonstrates that the Debtor will pay approximately $40,000 to the holders of Class 5 claims over a three-year period. The total amount of allowed Class 5 Claims is estimated to be approximately $890,000. Therefore, the projected distribution to Class 5 Claims is approximately 4%.

**5.6** **Class 6 – Equity.** All holders of equity interests shall retain their interests in the Debtor. Until all amounts owing to senior classes have been paid as provided by the terms of the Plan, the Debtor shall not make any dividends, distributions, or redemption payments to the holders of Class 6 Equity Interests on account of their interest in the Debtor. Notwithstanding anything herein, (i) Ms. Boenigk may pay herself a reasonable salary and (ii) the actual shareholder tax liability may be distributed

**ARTICLE 6**
**ACCEPTANCE OR REJECTION OF THE PLAN**

**6.1** **Presumed Acceptance of Plan**. Any Class that is unimpaired under this Plan is conclusively presumed to accept this Plan. Any Class that voted to accept the Plan is presumed to accept this Plan.

**6.2** **Presumed Rejection of Plan**. Any Class that voted to reject the Plan is presumed to reject this Plan.

# ARTICLE 7

## IMPLEMENTATION AND EXECUTION OF THE PLAN

**7.1      Means**. This Plan is based upon the distributions to creditor by the Debtor, at its option, by means of one or more of the following: (a) cash presently held by the Debtor and cash to be acquired through the operation of its business including cash generated from the contracts the Debtor is currently under and those contracts that the Debtor may win at a later date; and (b) collection of accounts receivable.  The Debtor shall deliver to the holders of Allowed Secured Claims the instruments reflecting the treatment of such claims.  The Debtor shall include the form of all such instruments in the Plan Supplement.

**7.2      Continued Existence**. Debtor shall continue to exist as Reorganized Debtor after the Effective Date. Ms. Rebecca E. Boenigk shall continue to operate the Debtor's business as its CEO and majority shareholder.  Ms.  Boenigk's rate of compensation for the year 2022 shall be $120,500.00.

**7.3      Operations of Reorganized Debtor.** After the Effective Date, the Reorganized Debtor shall continue in business and shall carry on its business affairs without consultation or approval from the Bankruptcy Court or the Creditors. The Reorganized Debtor shall be free to use or sell its assets, hire, and compensate Professionals and otherwise operate free of the restrictions, limitations and constraints existing under the Code. The Reorganized Debtor shall operate in conformity with the Plan and shall make distributions to Creditors timely and in accordance with the Plan.

**7.4      Vesting of Assets**. Unless a plan is confirmed under 1191(b), on the Effective Date, all Property of the Estate of the Debtor, including, but not limited to any rights or causes of action, whether under the Bankruptcy Code or any other applicable law, shall vest in Reorganized Debtor. Claims and causes of action shall include, but not be limited to claims against Knoll, Inc. in cause no 170602337.  If a plan is confirmed under 1191(b), all Property shall not vest with the Reorganized Debtor until all plan payments have been made.  Upon any conversion of the Bankruptcy Case to Chapter 7, all assets vesting in Reorganized Debtor shall pass to the Chapter 7 trustee as property of the Chapter 7 Bankruptcy Estate.

**7.5      Preservation of Debtor's Claims**. Any and all causes of action which the Debtor may have, including, but not limited to Avoidance Actions, or which may be enforceable under any statute, shall be preserved and shall constitute Property of the Estate and shall be conveyed to Reorganized Debtor on the Effective Date. The Court shall retain jurisdiction to determine all such causes of action.

**7.6      Preservation of Insurance**. Nothing in this Plan, including the discharge or release of the Debtor provided in this Plan, shall diminish or impair the enforceability of any insurance policies that may cover any Claims against the Debtor, the Reorganized Debtor or any member, officer, director, agent, professional, financial advisor or other Person covered by any insurance policy maintained by the Debtor.

**7.7     Release of Liens**. Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, all mortgages, deeds of trust, Liens or other security interests against the Property of the Estate shall be released on the Effective Date.

**7.8     Exemption from Stamp or Similar Taxes**. In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, distribution, transfer or exchange of Reorganized Debtor Common Stock or other Estate Property; (b) the creation, modification, consolidation or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, on in connection with, this Plan or the Confirmation Order; (c) the making, assignment, modification or recording of any lease or sublease; or (d) the making, delivery, or recording of a deed or other instrument of transfer  under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated by any of the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax or stamp act or real estate transfer or mortgage recording tax, or any governmental assessment. The appropriate state or local government officials or agents shall be directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**7.9     Recordable Order**. Upon Confirmation of the Plan, the Confirmation Order shall be deemed to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders when certified by the Clerk of the Bankruptcy Court.

**7.10     Effectuating Documents and Further Transactions**. The chief executive officer and other authorized officer of the Debtor and/or Reorganized Debtor, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE 8

## CONDITIONS PRECEDENT

**8.1     Conditions To Confirmation**. Confirmation of the Plan shall not occur unless the following conditions have been satisfied by the Debtor or waived, in writing, by the Debtor:

> (i)       The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order, and any other order entered in conjunction therewith, in form and substance acceptable to the Debtor.

**8.2     Conditions to Effectiveness**. Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur unless and until each of the

following conditions has been satisfied by the Debtor or, if applicable, waived, in writing;

(i)   The Confirmation Order shall have become a Final Order, provided however, that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the option of the Debtor, unless the effectiveness of the Confirmation Order has been stayed or vacated, in which case the Effective Date may be, again at the option of the Debtor, the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order; and

(ii)   No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code has been made, or, if made, remains pending.

**8.3   Notice to Bankruptcy Court.** Promptly after the Effective Date, Reorganized Debtor shall file with the clerk of the Bankruptcy Court a notice that the Plan has become effective; provided, however, that failure to file such notice shall not affect the effectiveness of the Plan or the rights and substantive obligations of any entity hereunder.

## ARTICLE 9

## RESOLUTION OF OBJECTIONS TO CLAIMS AND INTERESTS

**9.1   Claims on File**. The Debtor is relying upon the formal proofs of claims on file and the Debtor's Schedules currently on file in seeking confirmation of the Plan. No informal Proofs of Claim shall be deemed to have been filed in this Chapter 11 Case. No informal amendment, modification or supplementation shall be deemed filed in this Chapter 11 Case. No Proofs of Claim may be filed, amended, modified, or supplemented after the Confirmation Date without the consent of the Debtor. Any filing prohibited by this paragraph shall be void.

**9.2   Objections to Claims**. Except as is otherwise provided for with respect to Professional Fees or as otherwise ordered by the Bankruptcy Court, objections to Claims and Equity Interests shall be prosecuted as follows:

9.2.1   Pre-Effective Date Objections - Prior to the Effective Date, any party entitled to do so under the Bankruptcy Code or order of the Court may file and prosecute objections to Claims. The failure of the Debtor prior to Confirmation to object to a Claim for purposes of voting on the Plan shall in no way be deemed to be a waiver of the right of Reorganized Debtor to object to such Claim in whole or in part.

9.2.2   Post Effective Date Objections - After the Effective Date, objections to Claims and Equity Interests may be made exclusively by Reorganized Debtor. Objections to Claims and Equity Interests shall be made as soon as practicable, but in no event later than sixty (60) days after the Effective Date (unless otherwise ordered by the Bankruptcy Court). The filing, prosecution, settlement, or withdrawal of all objections to Claims and Equity Interests filed after the Effective Date are reserved to the sound discretion of Reorganized Debtor.

**9.3   Disallowance of Penalties and Fines**. Except as provided for in the Plan, no distribution

shall be made under this Plan on account of, and no Allowed Claim shall include, any fine, penalty or exemplary or punitive damages relating to or arising from any default or breach by the Debtor, and any Claim on account of such fine, penalty, or exemplary or punitive damages shall be deemed disallowed, whether or not an objection is filed to such Claim.

**9.4**     **Interest on Claims**. Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

## ARTICLE 10

## PROVISIONS GOVERNING DISTRIBUTIONS

**10.1**     **Distributions For Claims Allowed as of the Effective Date.** No distributions shall be made upon any Claim or Equity Interest except to Allowed Claims and Equity Interests, whether allowance results from: (i) the provisions of the Code; (ii) the entry of a Final Order on an objection to a Claim or Equity Interest; (iii) the determination of an objection to Claim or Equity Interest contained in an adversary proceeding or other pending litigation which the Court has directed to liquidate the Claim of a Creditor Equity Interest holder; (iv) through stipulation entered into between Reorganized Debtor and a Creditor or holder of an Equity Interest; or (v) under the express terms of the Plan. Nothing herein shall preclude the payment of the Debtor's operating expenses without Court order.

**10.2**     **Delivery of Distributions and Undeliverable or Unclaimed Distributions**.

      10.2.1     Delivery of Distributions in General - Distributions to holders of Allowed Claims shall be made at the addresses set forth in the Proofs of Claim; (ii) the Debtor's Schedules; or (iii) other records of Reorganized Debtor at the time of the distribution.

      10.2.2     Undeliverable and Unclaimed Distributions –

      (a)     Holding and Investment of Undeliverable and Unclaimed Distributions - If the distribution to any holder of an Allowed Claim is returned to Reorganized Debtor as undeliverable or is otherwise unclaimed, no further distributions shall be made to such holder unless and until Reorganized Debtor is notified in writing of such holder's then-current address. Undeliverable and unclaimed distributions shall be set aside or, in the case of a Cash distribution, deposited in a segregated, interest-bearing account, designated as an "unclaimed distribution reserve" (the "Unclaimed Distribution Reserve"), for the benefit of all such similarly situated Persons until such time as a distribution becomes deliverable or is claimed.

      (b)     After Distributions Become Deliverable - Reorganized Debtor shall make all distributions that have become deliverable or have been claimed subsequent to a distribution, as the case may be, without interest.

(c)      Failure to Claim Undeliverable Distributions - Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed distribution within one (1) year after the Confirmation Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Debtor and the Estate, Reorganized Debtor, or their property. In such cases, any Cash or other property held in the Unclaimed Distribution Reserve for distribution on account of such claims for undeliverable or unclaimed distributions shall become the property of Reorganized Debtor notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require anyone to attempt to locate any holder of an Allowed Claim.

**10.3      Withholding and Reporting Requirements**. In connection with the Plan and all distributions thereunder, Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**10.4      IRS Form W-9**. Within ninety (90) days of the Effective Date, an Internal Revenue Service Form W-9 will be mailed to each Creditor to whom a Cash distribution is to be made. No distribution hereunder shall be made to a Creditor until that Creditor prepares, executes, and returns to Reorganized Debtor the Internal Revenue Service Form W-9.

**10.5      Setoffs**. Reorganized Debtor may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever that the Debtor may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Reorganized Debtor of any such Claim that the Debtor may have against such holder.

**10.6      Payments and Distributions with Respect to Disputed Claims**. No payment or distribution under the Plan shall be made on account of any Claim unless and until such Claim becomes an Allowed Claim by Final Order of the Court.

**ARTICLE 11**

**EXECUTORY CONTRACTS**

**11.1      Generally**. Upon the Effective Date, the Debtor assumes all Executory Contracts which existed as of the Filing Date between the Debtor and any individual or entity, which: (i) have not heretofore either been assumed or rejected by Final Order or (ii) are the subject of a separate motion to assume or reject filed under Section 365 of the Bankruptcy Code by the Debtor prior to the Confirmation Date are hereby *assumed, unless listed on "Exhibit B" as specifically rejected*.  Exhibit B may be modified by the Debtor from time to time until the commencement of the confirmation hearing.

**11.2      Cure of Defaults**. Except to the extent that a different treatment has been agreed to by the non-debtor parties to any Executory Contract or Unexpired Lease to be assumed pursuant

to this Article of the Plan, the Debtor shall cure any monetary defaults pursuant to Section 365(b)(1) of the Bankruptcy Code by payment by Reorganized Debtor of the Cure Claim in Cash on the Effective Date. In the event of a dispute regarding: (i) the amount of the Cure Claim, (ii) the ability of Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the Cure Claim shall be paid by Reorganized Debtor following the entry of a Final Order resolving the dispute and approving assumption.

**11.3** **Determination of Cure Claims.** The Debtor shall, pursuant to Section 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with Section 365 of the Bankruptcy Code, file and serve a pleading with the Court, within sixty (60) days after the Confirmation Date, listing the Cure Claims of all Executory Contracts or Unexpired Leases to be assumed. The non-debtor parties to such Executory Contracts and Unexpired Leases to be assumed by the Debtor shall have fifteen (15) days from service to object to the proposed Cure Claim identified by the Debtor. The Debtor shall retain its right to reject any of its Executory Contracts and Unexpired Leases, including contracts or leases that are subject to a dispute concerning the amount of the Cure Claim, until five (5) Business Days following the entry of a Final Order resolving an objection to the amount of the Cure Claim.

**11.4** **Approval of Rejection of Executory Contracts**. Entry of the Confirmation Order shall constitute the approval of the rejection of any Executory Contracts to be rejected pursuant to this Article of the Plan, in accordance with Section 365(a) of the Bankruptcy Code.

**11.5** **Rejection Damage Claims**. Any Person or entity claiming rights under an Executory Contract rejected pursuant to the provisions of this Article shall have no later than the earlier of (a) thirty (30) days after the Effective Date, or (b) thirty (30) days after the date of any Final Order approving a Debtor's rejection of such Executory Contract to file with the Court any Claims arising out of the rejection of an Executory Contract. Any Claim not Timely Filed shall be forever barred and may not be asserted against the Debtor, Reorganized Debtor, or their property or their Estate. Each Claim resulting from such rejection shall constitute a Class 5 Unsecured Claim.

## ARTICLE 12

## JURISDICTION

**12.1** **Retention of Jurisdiction**. The Bankruptcy Court shall retain and have all of the jurisdiction conferred upon it by the Bankruptcy Reform Act of 1978, including all amendments thereof now existing or hereafter arising, and all amendments made to Title 28 of the United States Code after October 1, 1979. Without limiting the foregoing in any way, the Bankruptcy Court shall retain jurisdiction of this Chapter 11 Case after the Confirmation Date in respect to the following matters through and until the date this Court shall enter a final decree:

(i)     To enable any party in interest (including the Reorganized Debtor) to consummate any and all proceedings that it may bring prior to the Confirmation Date to set aside Liens, or to recover any preferences, transfers, assets, Claims or damages to which said party may be entitled, or to reject any contracts and recover any property under the provisions of the

Bankruptcy Code or other federal or state law;

(ii)        To hear and determine all Claims, and objections to Claims, including Claims arising from the rejection of any Executory Contract and any objections which may be made thereto;

(iii)       To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

(iv)       To adjudicate all Claims to any Lien on any Property of the Estate or any proceeds thereof;

(v)       To recover all assets and Property of the Estate, wherever located, to the extent necessary for the consummation of the Plan;

(vi)       To Allow or disallow any Claim;

(vii)       To resolve any disputes pertaining to the terms and conditions of the sale of any Property of the Estate;

(viii)       To resolve any disputes pertaining to the business operations of the Debtor during the pendency of the Chapter 11 Case;

(ix)       To enter any orders which may be necessary or appropriate to modify, carry out or enforce the provisions of the Plan;

(x)       To determine any defaults under the Plan, and the consequences of such default;

(xi)       To resolve any disputes over the meaning of any provision of the Plan;

(xii)       To make such determinations as are specifically provided in the Plan;

(xiii)       To hear and determine all requests for compensation and/or reimbursement of expenses which may be required under the Code, and not otherwise dispensed with under the Plan; and

(xiv)       To enter a final decree pursuant to Section 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

**12.2**    **Failure of Bankruptcy Court to Exercise Jurisdiction**. If the Bankruptcy Court abstains or exercises discretion not to hear any matter within the scope of its jurisdiction, nothing herein shall prohibit or limit the exercise of jurisdiction by any other tribunal having competent jurisdiction over such matter.

# ARTICLE 13
## MODIFICATION OF PLAN

**13.1**     **Pre-Confirmation Modifications**. Debtor may propose amendments or modifications to the Plan at any time prior to the Confirmation Date, with leave of the Court and upon notice pursuant to Section 1127(a) of the Bankruptcy Code and Bankruptcy Rules 3019.

**13.2**     **Post-Confirmation Modifications**. After the Confirmation Date, Modification of the Plan is permitted only upon Court order and only as authorized under section 1193 of the Bankruptcy Code.

# ARTICLE 14

## GENERAL PROVISIONS

**14.1**     **The Trustee**. The trustee appointed under section 1183(a) of the Bankruptcy Code ("Trustee") will have appropriate access to the management, books and records and professionals of the Company to evaluate the Plan. The Trustee's term is anticipated to end upon substantial consummation of the Plan. As permitted by section 1194(b) of the Bankruptcy Code, the Plan provides that the Debtor, and not the Trustee, will make all required payments under the Plan, thus resulting in administrative cost savings. The Trustee shall make its required filings to discharge his duties.

**14.2**     **Discharge**. If the Debtor's Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt:

    (i)         imposed by this Plan; or

    (ii)        to the extent provided in § 1141(d)(6) of the Bankruptcy Code.

**14.3**     If the Debtor's Plan is confirmed under section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt:

    (i)         on which the last payment is due after the first 3 years of the plan, or as otherwise provided in section 1192 of the Bankruptcy Code; or

    (ii)        excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

The rights afforded in the Plan and the payments and distributions to be made hereunder shall be in complete exchange for, and in full satisfaction and release of, all existing Claims, debts and obligations of any kind, nature or description whatsoever of or against the Debtor or any of its assets or property to the fullest extent permitted under section 1141(d)(1)(A) of the Bankruptcy Code. Upon the Discharge Date under either section 14.2 or 14.3 of the Plan, all existing Claims against the Debtor and Reorganized Debtor shall be and shall be deemed to be discharged except as otherwise provided herein. All holders of Claims shall be precluded from asserting against the Debtor, or any of its assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim. Upon the Discharge Date, the Debtor shall be deemed discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based upon such obligation is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of a Claim based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and Reorganized Debtor. In accordance with Section 524 of the Bankruptcy Code, the discharge provided for hereunder shall void any judgment against the Debtor to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtor or its Property to the extent it relates to a discharged Claim.   Notwithstanding anything in this Plan to the contrary, confirmation of the Plan shall not release or discharge any non-debtor parties from liability arising from any guaranty of any of the Debtor's obligations nor shall the confirmation of the plan be deemed a consent by any creditor to the release of any non-debtor for any obligation guaranteed by any non-debtor party.

**14.4**     **Injunction.** Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after the Confirmation Date, all Persons or entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor are permanently enjoined from taking any of the following actions against the Estate, Reorganized Debtor, or any of their property on account of any such Claims or Equity Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Lien or encumbrance; and (iv) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan.

**14.5**     **Temporary Injunction.**  A temporary injunction is hereby entered and shall be in effect as of the Effective Date, prohibiting the commencement or continuation of any action or proceeding against any affiliate, responsible person, guarantor, officer or director of the Debtor that otherwise would be liable to such holder of a Claim for payment of such Claim for any reason whatsoever, or against the property of any of the foregoing persons, so long as the Reorganized Debtor is not in default of the payment terms of such Claim as provided herein.  Further, the statute of limitations against any guarantor is tolled during the period the Plan payments are not in default.

As a material condition of this temporary injunction, Rebecca E. Boenig and Jaye E. Congleton covenant that they will not transfer any of their personal property or assets other than in the ordinary course of business. As additional consideration for the temporary injunction herein, Rebecca E. Boenig and Jaye E. Congleton shall ratify their personal guarantees.

**14.6**    **Exculpation**. Neither the Debtor or Reorganized Debtor, or any of their respective partners, general partners, members, officers, directors, employees, agents, advisors or Professionals have or may incur any liability to any holder of a Claim or Equity Interest, or any other party in interest, or any of their respective members or former members, agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan (the "Chapter 11 Activities"), *except for* their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction, and in all respects are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Chapter 11 Activities. No holder of a Claim, Equity Interest or any other party in interest, including their respective agents, employees, representatives, financial advisors, attorneys or affiliates, have any right of action against the Debtor, Reorganized Debtor, or any of their respective partners, general partners, officers, directors, members, employees, agents, advisors or Professionals for any act or omission in connection with the Chapter 11 Activities, *except for* their acts or omissions constituting willful misconduct or gross negligence as finally determined by a court of competent jurisdiction.

**14.7**    **Default in Plan Payments**.  In the event of a non-monetary or monetary default by the Debtor under the Plan, the affected Creditor shall provide written notice of such default as provided herein. The Debtor shall have thirty (30) days from the earlier to occur of:  (i) the date of receipt of the written notice sent by certified mail or by overnight delivery service, or (ii) the date of receipt of the written notice sent by first class mail to cure the default. (For the purposes of the written notice by United States first class mail, postage prepaid, such notice will be deemed received five (5) days after depositing the same in the United States mail).  In the event the Debtor does not cure the default within the thirty (30) day period provided herein, the affected Creditor or Interest Holder shall be entitled to pursue its state and/or federal law remedies –as limited by the Plan– without further notice or hearing before the Court. In the event the Plan is confirmed pursuant to 11 U.S.C. §1191(b), the following default provisions shall apply: Pursuant to 11 U.S.C. §1191(c)(3), in the event that payments are not made by the Debtor as required by the Plan and Confirmation Order, creditors and parties-in-interest shall have the right to seek dismissal or conversion of the Bankruptcy Case. Creditors holding liens against particular assets of the Debtor shall also have the right to file a motion for relief from the automatic stay. The temporary injunction imposed by Section 14.5 of this Plan shall also expire and Creditors may pursue all remedies under applicable law without further order from the Bankruptcy Court.  The Bankruptcy Court shall retain jurisdiction to determine all matters related to enforcement of the Plan and Confirmation Order.

**14.8**    **Revocation, Withdrawal or Non-Consummation**. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of

reorganization. If the Debtor revokes or withdraws the Plan, or if confirmation or consummation does not occur, then: (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Person,(ii) prejudice in any manner the rights of such Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

**14.9    Severability of Plan Provisions**. If, prior to confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.10    Successors and Assigns**. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**14.11    Final Decree**. The Debtor shall file an application for entry of a final decree within one (1) year after the Effective Date.

**14.12    Binding Effect**. Upon the date the Confirmation Order becomes a Final Order, the provisions of the Plan shall bind the Debtor, the Reorganized Debtor, all Creditors and any party in interest, whether or not such Creditor or party in interest has accepted or rejected the Plan, pursuant to Section 1141 of the Bankruptcy Code.

**14.13    Notices**.  Unless otherwise provided herein or in any Plan Supplement document, all notices or demands required or permitted hereunder shall be deemed to have been duly given and served when made in writing and deposited in the United States Mail, certified mail (return receipt requested), in an envelope addressed to the last known address of the noticed party, with postage prepaid. Any notices to be provided to the Reorganized Debtor shall be addressed as follows:

To the Reorganized Debtor:

> Neutral Posture, Inc.
> Attn: Rebecca E. Boenigk
> 3904 N. Texas Avenue
> Bryan, TX 77803

With a copy to the attorneys for the Debtor:

> Howley Law, PLLC
> Attn: Eric Terry
> Pennzoil Place – South Tower
> 711 Louisiana St., Suite 1850
> Houston, Texas 77002
> Email: eric@howley-law.com

**14.14** **Governing Laws**. The Plan shall be governed by the laws of the State of Texas and the laws of the United States, as may be applicable.

**14.15** **Cramdown**, The Debtor will request Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan to the extent, if any, that confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE 15

## SIGNATURES

The Debtor, Neutral Posture, Inc. as Debtor in Possession in the above styled and numbered Chapter 11 Case, submits the Plan in good faith pursuant to all requirements of the Bankruptcy Code, and submits that, within its knowledge, information and belief, the Plan is fair and equitable, is not proposed in violation of Section 1129(d) or by any means forbidden by law, and should be confirmed.

DATED this the January 26, 2022.


Neutral Posture, Inc.

By: _____
    Rebecca E. Boenigk
    Its President and Chief Executive Officer

Neutral Posture, Inc.
Projected Income Statement - 2022-28

**EXHIBIT A**

| | 2022 Total | 2023 Total | 2024 Total | 2025 Total | 2026 Total | 2027 total | 2028 total |
|---|---|---|---|---|---|---|---|
| Sales & Other Income: | | | | | | | |
| 400 Gross Sales - Seating/Acces | 5,000,000 | 5,500,000 | 5,500,000 | 6,050,000 | 6,655,000 | 7,320,500 | 7,320,500 |
| 401 Gross Sales - Systems | 4,000,000 | 4,400,000 | 4,400,000 | 5,324,000 | 5,856,400 | 6,442,040 | 6,442,040 |
| 405 8(a) sales | 1,450,000 | 1,595,000 | 1,754,500 | 1,929,950 | 2,112,945 | 2,335,240 | 2,335,240 |
| 415 Freight Charged Customer | 144,000 | 158,400 | 174,240 | 191,664 | 210,830 | 231,913 | 231,913 |
| 417 Fuel Surcharge | - | - | - | - | - | - | - |
| 418 Teaming Admin/Installation Fee | 100,000 | | | | | - | |
| 419 Teaming Revenue | - | | | | | - | |
| 420 Other Income (Expense) | - | - | | | | | |
| Net Sales | 10,594,000 | 11,653,400 | 11,828,740 | 13,495,614 | 14,835,175 | 16,329,693 | 16,329,693 |
| | | | | | | | |
| 500 Direct Material - Seating/Acces | 2,225,000 | 2,502,500 | 2,475,000 | 2,752,750 | 3,028,025 | 3,330,828 | 3,330,828 |
| 501 Direct material - Systems | 1,720,000 | 1,909,600 | 1,936,000 | 2,342,560 | 2,576,816 | 2,834,498 | 2,834,498 |
| 8(a) costs | 652,500 | 717,750 | 789,525 | 868,478 | 950,825 | 1,050,858 | 1,050,858 |
| 505 Freight Out | 953,460 | 1,048,806 | 1,064,587 | 1,214,605 | 1,335,166 | 1,469,672 | 1,469,672 |
| 510 Freight In | 423,760 | 466,136 | 473,150 | 539,825 | 593,407 | 653,188 | 653,188 |
| 513 Installation Expense | 100,000 | 110,000 | 111,655 | 127,389 | 140,034 | 154,141 | 154,141 |
| 515 Labor & Related | 1,350,000 | 1,485,000 | 1,507,344 | 1,719,754 | 1,890,456 | 2,080,903 | 2,080,903 |
| 540 Warranty Expense | 63,564 | 69,920 | 70,972 | 80,974 | 89,011 | 97,978 | 97,978 |
| 545 Research & Development | 42,376 | 46,614 | 47,315 | 53,982 | 59,341 | 65,319 | 65,319 |
| 550 Insurance | 140,000 | 154,000 | 156,317 | 178,345 | 196,047 | 215,797 | 215,797 |
| 555 Supplies | 42,000 | 46,200 | 46,895 | 53,503 | 58,814 | 64,739 | 64,739 |
| 560 Scrap/Obsolete Inv. | 6,000 | 6,600 | 6,699 | 7,643 | 8,402 | 9,248 | 9,248 |
| 564 Teaming COGS | - | - | - | - | - | - | - |
| 565 Other COS | 78,000 | 85,800 | 87,091 | 99,364 | 109,226 | 120,230 | 120,230 |
| Total Cost of Sales | 7,796,660 | 8,648,926 | 8,772,550 | 10,039,172 | 11,035,570 | 12,147,399 | 12,147,399 |
| | | | | | | | |
| Gross Profit | 2,797,340 | 3,004,474 | 3,056,190 | 3,456,442 | 3,799,605 | 4,182,294 | 4,182,294 |
| | | | | | | | |
| Selling General & Admin: | | | | | | | |
| 600 Wages & Related | 945,000 | 1,039,500 | 1,055,141 | 1,203,828 | 1,323,319 | 1,456,632 | 1,456,632 |
| 625 Internal M&E | - | | | | | | |
| 630 Business Travel | 48,000 | 52,800 | 53,594 | 61,147 | 67,216 | 73,988 | 73,988 |
| 635 Marketing/Advertising | 19,899 | 21,889 | 22,219 | 25,350 | 27,866 | 30,673 | 30,673 |
| 640 Commissions | 826,332 | 908,965 | 922,642 | 1,052,658 | 1,157,144 | 1,273,716 | 1,273,716 |
| 645 Conventions | - | - | - | - | - | - | - |
| 650 Showrooms | - | - | - | - | - | - | - |
| 655 Spiffs | 18,000 | 19,800 | 20,098 | 22,930 | 25,206 | 27,745 | 27,745 |
| 660 Novation & Dealer Rebates-Fees | 6,000 | 6,600 | 6,699 | 7,643 | 8,402 | 9,248 | 9,248 |
| 665 Other Sales Expense | 12,000 | 13,200 | 13,399 | 15,287 | 16,804 | 18,497 | 18,497 |
| 670 Samples/Evals | 18,000 | 19,800 | 20,098 | 22,930 | 25,206 | 27,745 | 27,745 |
| 680 Bad Debt Expense | - | - | - | - | - | - | - |
| 685 Dues, Subscriptions & Licenses | 14,825 | 16,307 | 16,553 | 18,885 | 20,760 | 22,851 | 22,851 |
| 690 Professional & Design Fees | 65,000 | 71,500 | 72,576 | 82,803 | 91,022 | 100,192 | 100,192 |
| 695 Accounting Fees | 16,500 | 18,150 | 18,423 | 21,019 | 23,106 | 25,433 | 25,433 |
| 700 Consulting Fees | 60,000 | 66,000 | 66,993 | 76,434 | 84,020 | 92,485 | 92,485 |
| 705 Communication & Utilities | 71,081 | 78,190 | 79,366 | 90,550 | 99,538 | 109,566 | 109,566 |
| 715 Office Expenses | 95,000 | 104,500 | 106,072 | 121,020 | 133,032 | 146,434 | 146,434 |
| 720 Charitable Contributions | - | - | - | - | - | - | - |
| 725 Insurance | 42,000 | 46,200 | 46,895 | 53,503 | 58,814 | 64,739 | 64,739 |
| 730 Property Taxes | 96,000 | 105,600 | 108,768 | 112,031 | 115,392 | 118,854 | 122,419 |
| 740 Financial Fees | 21,188 | 23,307 | 23,657 | 26,991 | 29,670 | 32,659 | 32,659 |
| 745 Other SG&A | 39,198 | 43,118 | 43,766 | 49,934 | 54,890 | 60,420 | 60,420 |
| Bankruptcy attorney fees | 50,000 | | | | | | |
| trustee | 10,000 | | | | | | |
| Total SG&A | 2,474,023 | 2,655,426 | 2,696,959 | 3,064,943 | 3,361,407 | 3,691,877 | 3,695,443 |
| | | | | | | | |
| Net Operating Inc(Loss) | 323,317 | 349,048 | 359,231 | 391,499 | 438,198 | 490,417 | 486,851 |
| | | | | | | - | - |
| taxable income | 323,317 | 349,048 | 359,231 | 391,499 | 438,198 | 490,417 | 486,851 |
| shareholder tax liability at 35% | (113,161) | (122,167) | (125,731) | (137,025) | (153,369) | (171,646) | (170,398) |
| available for debt service | 210,156 | 226,881 | 233,500 | 254,474 | 284,829 | 318,771 | 316,453 |
| available monthly | 17,513 | 18,907 | 19,458 | 21,206 | 23,736 | 26,564 | 26,371 |

| | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | |
|---|---|---|---|---|---|---|---|---|
| interest rate | 4.25% | 4.50% | 4.50% | 5.25% | 6.00% | 6.50% | 6.50% | |
| available to pay monthly | | | | | | | | **total over 7 years** |
| JPMChase | 11,633 | 12,300 | 12,300 | 14,000 | 16,000 | 17,333 | 17,333 | $1,210,800.00 |
| T2W | 2,900 | 3,100 | 3,100 | 4,200 | 4,800 | 5,200 | 5,200 | $342,000.00 |
| SBA EIDL | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | $225,600.00 |
| | 16,883 | 17,750 | 17,750 | 20,550 | 23,150 | 24,883 | 24,883 | $1,778,400.00 |
| remaining for unsecured | 630 | 1,157 | 1,708 | | | | | $41,937.45 |

**Exhibit B**
**Rejected Leases and/or Executory Contr**

| Name of Counter-Party | Address |
|---|---|
| Dahill | 2700 Earl Rudder Freeway, College Station, TX 77845 |
| Jenkinsdesign, LLC | 4 Panorama Crest Ave., Las Vegas, NV 89135 |
| Synergy Product Development | 5037 68th St. SE, Caledonia, MI 49316 |

**racts**

Description
Maintenance and lease agreement for 11 copiers
Royalty Agreement
Royalty Agreement

# EXHIBIT B

Neutral Posture, Inc.
Projected Income Statement - 2022-28

| | 2022 Total | 2023 Total | 2024 Total | 2025 Total | 2026 Total | 2027 total | 2028 total |
|---|---|---|---|---|---|---|---|
| Sales & Other Income: | | | | | | | |
| 400 Gross Sales - Seating/Acces | 5,000,000 | 5,500,000 | 5,500,000 | 6,050,000 | 6,655,000 | 7,320,500 | 7,320,500 |
| 401 Gross Sales - Systems | 4,000,000 | 4,400,000 | 4,400,000 | 5,324,000 | 5,856,400 | 6,442,040 | 6,442,040 |
| 405 8(a) sales | 1,450,000 | 1,595,000 | 1,754,500 | 1,929,950 | 2,112,945 | 2,335,240 | 2,335,240 |
| 415 Freight Charged Customer | 144,000 | 158,400 | 174,240 | 191,664 | 210,830 | 231,913 | 231,913 |
| 417 Fuel Surcharge | | | | - | - | - | - |
| 418 Teaming Admin/Installation Fee | 100,000 | | | | | | |
| 419 Teaming Revenue | | - | | | | - | |
| 420 Other Income (Expense) | - | | | | | | |
| Net Sales | 10,594,000 | 11,653,400 | 11,828,740 | 13,495,614 | 14,835,175 | 16,329,693 | 16,329,693 |
| | | | | | | | |
| 500 Direct Material - Seating/Acces | 2,225,000 | 2,502,500 | 2,475,000 | 2,752,750 | 3,028,025 | 3,330,828 | 3,330,828 |
| 501 Direct material - Systems | 1,720,000 | 1,909,600 | 1,936,000 | 2,342,560 | 2,576,816 | 2,834,498 | 2,834,498 |
| 8(a) costs | 652,500 | 717,750 | 789,525 | 868,478 | 950,825 | 1,050,858 | 1,050,858 |
| 505 Freight Out | 953,460 | 1,048,806 | 1,064,587 | 1,214,605 | 1,335,166 | 1,469,672 | 1,469,672 |
| 510 Freight In | 423,760 | 466,136 | 473,150 | 539,825 | 593,407 | 653,188 | 653,188 |
| 513 Installation Expense | 100,000 | 110,000 | 111,655 | 127,389 | 140,034 | 154,141 | 154,141 |
| 515 Labor & Related | 1,350,000 | 1,485,000 | 1,507,344 | 1,719,754 | 1,890,456 | 2,080,903 | 2,080,903 |
| 540 Warranty Expense | 63,564 | 69,920 | 70,972 | 80,974 | 89,011 | 97,978 | 97,978 |
| 545 Research & Development | 42,376 | 46,614 | 47,315 | 53,982 | 59,341 | 65,319 | 65,319 |
| 550 Insurance | 140,000 | 154,000 | 156,317 | 178,345 | 196,047 | 215,797 | 215,797 |
| 555 Supplies | 42,000 | 46,200 | 46,895 | 53,503 | 58,814 | 64,739 | 64,739 |
| 560 Scrap/Obsolete Inv. | 6,000 | 6,600 | 6,699 | 7,643 | 8,402 | 9,248 | 9,248 |
| 564 Teaming COGS | - | | | | | | |
| 565 Other COS | 78,000 | 85,800 | 87,091 | 99,364 | 109,226 | 120,230 | 120,230 |
| Total Cost of Sales | 7,796,660 | 8,648,926 | 8,772,550 | 10,039,172 | 11,035,570 | 12,147,399 | 12,147,399 |
| | | | | | - | | |
| Gross Profit | 2,797,340 | 3,004,474 | 3,056,190 | 3,456,442 | 3,799,605 | 4,182,294 | 4,182,294 |
| | | | | | - | | |
| Selling General & Admin: | | | | | - | | |
| 600 Wages & Related | 945,000 | 1,039,500 | 1,055,141 | 1,203,828 | 1,323,319 | 1,456,632 | 1,456,632 |
| 625 Internal M&E | - | - | - | - | - | - | |
| 630 Business Travel | 48,000 | 52,800 | 53,594 | 61,147 | 67,216 | 73,988 | 73,988 |
| 635 Marketing/Advertising | 19,899 | 21,889 | 22,219 | 25,350 | 27,866 | 30,673 | 30,673 |
| 640 Commissions | 826,332 | 908,965 | 922,642 | 1,052,658 | 1,157,144 | 1,273,716 | 1,273,716 |
| 645 Conventions | - | | | | | | |
| 650 Showrooms | - | | | | | | |
| 655 Spiffs | 18,000 | 19,800 | 20,098 | 22,930 | 25,206 | 27,745 | 27,745 |
| 660 Novation & Dealer Rebates-Fees | 6,000 | 6,600 | 6,699 | 7,643 | 8,402 | 9,248 | 9,248 |
| 665 Other Sales Expense | 12,000 | 13,200 | 13,399 | 15,287 | 16,804 | 18,497 | 18,497 |
| 670 Samples/Evals | 18,000 | 19,800 | 20,098 | 22,930 | 25,206 | 27,745 | 27,745 |
| 680 Bad Debt Expense | | | | | | | |
| 685 Dues, Subscriptions & Licenses | 14,825 | 16,307 | 16,553 | 18,885 | 20,760 | 22,851 | 22,851 |
| 690 Professional & Design Fees | 65,000 | 71,500 | 72,576 | 82,803 | 91,022 | 100,192 | 100,192 |
| 695 Accounting Fees | 16,500 | 18,150 | 18,423 | 21,019 | 23,106 | 25,433 | 25,433 |
| 700 Consulting Fees | 60,000 | 66,000 | 66,993 | 76,434 | 84,020 | 92,485 | 92,485 |
| 705 Communication & Utilities | 71,081 | 78,190 | 79,366 | 90,550 | 99,538 | 109,566 | 109,566 |
| 715 Office Expenses | 95,000 | 104,500 | 106,072 | 121,020 | 133,032 | 146,434 | 146,434 |
| 720 Charitable Contributions | - | - | - | - | - | - | |
| 725 Insurance | 42,000 | 46,200 | 46,895 | 53,503 | 58,814 | 64,739 | 64,739 |
| 730 Property Taxes | 96,000 | 105,600 | 108,768 | 112,031 | 115,392 | 118,854 | 122,419 |
| 740 Financial Fees | 21,188 | 23,307 | 23,657 | 26,991 | 29,670 | 32,659 | 32,659 |
| 745 Other SG&A | 39,198 | 43,118 | 43,766 | 49,934 | 54,890 | 60,420 | 60,420 |
| Bankruptcy attorney fees | 50,000 | | | | | | |
| trustee | 10,000 | | | | | | |
| Total SG&A | 2,474,023 | 2,655,426 | 2,696,959 | 3,064,943 | 3,361,407 | 3,691,877 | 3,695,443 |
| | | | | | | | |
| Net Operating Inc(Loss) | 323,317 | 349,048 | 359,231 | 391,499 | 438,198 | 490,417 | 486,851 |
| | | | | | | | |
| taxable income | 323,317 | 349,048 | 359,231 | 391,499 | 438,198 | 490,417 | 486,851 |
| shareholder tax liability at 35% | (113,161) | (122,167) | (125,731) | (137,025) | (153,369) | (171,646) | (170,398) |
| available for debt service | 210,156 | 226,881 | 233,500 | 254,474 | 284,829 | 318,771 | 316,453 |
| available monthly | 17,513 | 18,907 | 19,458 | 21,206 | 23,736 | 26,564 | 26,371 |

| | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | |
|---|---|---|---|---|---|---|---|---|
| interest rate | 4.25% | 4.50% | 4.50% | 5.25% | 6.00% | 6.50% | 6.50% | |
| available to pay monthly | | | | | | | | total over 7 years |
| JPMChase | 11,633 | 12,300 | 12,300 | 14,000 | 16,000 | 17,333 | 17,333 | $1,210,800.00 |
| T2W | 2,900 | 3,100 | 3,100 | 4,200 | 4,800 | 5,200 | 5,200 | $342,000.00 |
| SBA EIDL | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | 2,350 | $197,400.00 |
| | 16,883 | 17,750 | 17,750 | 20,550 | 23,150 | 24,883 | 24,883 | $1,750,200.00 |
| remaining for unsecured | 630 | 1,157 | 1,708 | 656 | 586 | | | $56,840.45 |